**UNITED STATES**

v.

**Staff Sergeant Lester T. HERNDON, 385–44–4829, US Army, Company D, 4th Battalion, 2d Basic Combat Training Brigade, US Army Training Center, Fort Dix, New Jersey.**

CM 430760.

U. S. Army Court of Military Review.

Sentence Adjudged 2 Oct. 1973.

Decided 12 May 1976.

Appellate Counsel for the Accused: CPT Robert D. Jones, JAGC; CPT Robert C. Mueller, JAGC; CPT Michael R. Caryl, JAGC; LTC Edward S. Adamkewicz, Jr., JAGC; COL Alton Harvey, JAGC; COL Victor A. De Fiori, JAGC.

Appellate Counsel for the United States: CPT Russell S. Estey, JAGC; CPT Lee D. Schinasi, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC; LTC Ronald M. Holdaway, JAGC.

## OPINION OF THE COURT

COSTELLO, Judge:

This Court's first review of appellant's conviction of rape disclosed an issue concerning the jury selection process. We ordered a limited hearing below to develop facts relevant to that issue. *United States v. Herndon*, 50 C.M.R. 166 (A.C.M.R.1975). Based on the facts reported from that hearing and our further review of the original pleadings, we find no error meriting relief.

Appellant now asserts that error occurred prior to the limited hearing we ordered, in that he was denied formal representation at that hearing by the action counsel who represented him before this Court. He does not attack the adequacy of counsel who did represent him, nor does he assert either the denial of any freedom of communication with appellate counsel or any injury flowing from the absence from the proceedings below of any of the other three appellate counsel of record. Essentially, his complaint is cast in terms of an improper denial of a request for individual military counsel.

Appellant made a timely request that his appellate counsel be appointed ". . . pursuant to Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b) . . . ." That request was denied; so were his appeal of that denial to The

Judge Advocate General and a similar motion to the trial judge at the limited hearing. Now, appellant challenges the factual basis of those denials and adds two further contentions: that appellate defense counsel is required to represent appellate clients at rehearings or further hearings ordered by this Court, *citing* Article 70, UCMJ, and *United States v. Flint*, 50 C.M.R. 865 (A.M.C.R.1975), *pet. granted* 10 October 1975, and that appellants have an additional right to individually selected military counsel at such hearings under Article 70, UCMJ, 10 U.S.C. § 870.

We will show later that the customary arguments about "availability" of requested counsel at the trial level are inapposite in this context. However, the policy that there should be an early resolution of legal issues requires certain findings in customary terms. We hold the actions of the Chief, US Army Legal Services Agency, The Judge Advocate General and the trial judge to have been well and reasonably taken.

Those officials had before them compelling facts and circumstances. The requested counsel was a Branch Chief in the Defense Appellate Division of the Legal Services Agency; as such, he was immediately responsible for numerous cases both as action counsel and supervisor. During and preceding the period in question, the Division was burdened with cases to the extent that emergency actions were taken to procure additional attorneys and other resources. Indicative of the press of business in the Division is that the file in this case contains eight requests for enlargements of time to file pleadings which consumed most of calendar year 1974 before our first consideration of this case and, then, other requests which account for about half of calendar 1975. Most of those requests were justified by the assertion ". . . that due to numerous cases previously assigned, counsel has not yet had time to review the record of trial in this case thoroughly." Most of the appellants whose "numerous" cases were pending were in jail or in the limbo of one awaiting execution of a punitive discharge. On the other hand, there

was no shortage of competent counsel in the field, and no legal activity in the Army warranting a higher priority than that to which appellant's counsel was then assigned.

This evidence corroborates to a certainty the position of those authorities who denied appellant's request for individual counsel. The demands of all the clients in the system were given proper recognition, as was the husbanding of scarce resources in a period of stress so severe that even appellant's own case was substantially delayed. We find that appropriate aspects of appellant's request were duly considered, and hold that the administrative denial would have been proper, even if this case had been within the ordinary ambit of Article 38, UCMJ, and paragraph 48 of the *Manual.*

## II

The new contentions of appellant expose the material differences between his initial request and the customary request for individual counsel, however. The first difference is his proposition that hearings such as we ordered are "part of the appellate process," *citing United States v. Flint, supra.* Appellant asserts that this language requires representation at such hearings by the same counsel who represented him on appeal, but we do not find the result in *Flint* controlling.

The narrow problem in *Flint* was to find standards for assessing allegations of denials of due process through post-trial delay or of asserted violations of Article 10, UCMJ, 10 U.S.C. § 810. Thus, if rehearings ordered by this Court were found to be the same as trials, one set of rules would apply. However, if rehearings are different from trials in that context, the differences might warrant application of different standards of timeliness. Following a discussion of trials and rehearings in terms of the rights of accused persons and the whole system, the opinion stated:

"We conclude that *for the purposes of identifying standards for the assessment of the timeliness of processing,* the military appellate phase includes all those actions ordered and permitted by its appellate tribunals in the exercise of their jurisdiction." [Emphasis supplied.] *

We also recognized that for other purposes results might differ. Thus, as a matter of prison administration or for review of continued detention, persons for whom rehearings have been ordered should be treated as if in pretrial confinement.

■ Therefore, *Flint* provides appellant with possible, but not automatic, support for his argument. A determination of rights, law or policy at any point in the court-martial process must be preceded by analysis of the interests asserted in terms of the specific part of the process involved. *Flint* decided that different standards of timeliness were warranted because the force and direction of strict trial standards were largely satisfied after action by the convening authority. To use that pattern of analysis here, appellant must show that limited hearings are so much more like the review before us than like trials that continuity of representation is demanded. That burden is insuperable.

The language of Article 66 also makes it clear that we are to act only on a record generated in an adversary proceeding at the trial level, i. e., we are to review findings made by a trier of fact who saw and heard the witnesses. Thus, the hearing here involved must be regarded as an original proceeding, governed by the rules and concepts applicable to courts of first instance.

That conclusion disposes of the argument that appellant was entitled to representation by his appellate counsel because the hearing was part of the same proceeding as that to which counsel was first appointed. There remains an argument that appellant should have had the same counsel under the policy favoring continuity of representation announced in the ABA Standards for Providing Defense Services.

---

* *Flint* was decided before *Kidd v. United States,* 1 M.J. 302 (1975) and is pending review on petition by appellant to the U. S. Court of Military Appeals.

Although unique, the military defender system which has been in effect since enactment of the 1951 Code conforms to the more recently promulgated ABA Standards Relating to the Administration of Criminal Justice, Compilation (1974). (Cited hereafter as ABA Compilation.) The touchstone of the Standards as they relate to providing defense services is ". . . that the *system* for providing counsel and facilities for the defense be as good as the system which society provided for the prosecution." ABA Compilation, 141. [Emphasis in original.] In terms of this problem, there has been no suggestion that the government counsel on appeal does or should ensure his case by appearing in proceedings ordered at the trial level by an appellate court. Thus, everybody is at least even in terms of the general principle.

The Standards are more specific as to relevant details, although recognizing that "[n]o single form of organization can be prescribed which is ideally suited to every American community." ABA Compilation, 143. The military forces constitute a separate society within the American polity, *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) and some differences from state or federal practice may be expected. In practice, there are few.

The Standards announce that counsel should be provided for all principal and collateral proceedings upon and after the initiation of a criminal action. Then they provide that "[C]ounsel initially appointed should continue to represent the defendant through all stages of the proceedings unless a new appointment is made because geographic considerations or other factors make it necessary." ABA Compilation, 151. This policy is reflected at several points throughout the Standards, but always with the recognition that it is not at all absolute. *Id.*, at 419, 436 and 459. Variations from the policy may stem from local conditions or the irrelevance of the bases for the policy in particular circumstances.

There are two bases for the policy favoring continuity of representation from trial through appeal: the advantage of familiarity with a case and to help insure that the right of appeal is not lost during an interval of non-representation. ABA Standards for Providing Defense Services, Approved Draft (1968) p. 48. That second basis may be summarily dismissed from the military context; a military accused faces no such danger. Articles 65–70, UCMJ, 10 U.S.C. §§ 865–870.

Familiarity with a case through preparation for trial and the trial itself doubtless provides a headstart for counsel preparing an appeal. This consideration may be even more significant in our system because this Court has unique powers with respect to both facts and the sentence. However, the policy favoring continuity of representation may be overcome by considerations of convenience, i. e., an "unreasonable burden of travel" on counsel. The commentary to the Approved Draft cited above notes without criticism that time and distance factors were found sufficient to overcome the general policy in Utah and Nevada. The military problem with time and distance factors needs no exposition here; the whole distance across both Utah and Nevada is but a fraction of the distance from Korea, Thailand or Germany to Washington, D. C. Our experience satisfies us that the demands of even one case per year in which counsel at a distant trial followed it through the appellate process would be sufficient to impair unacceptably his utility in his unit of assignment.

Our problem here is not that of trial counsel travelling up with his case, but of appellate counsel travelling down—a direction not specifically considered in the Standards. Taking the policy of continuity as generally applicable in either event, we find the bases for the policy even less persuasive in this context. Again, there is no danger of default from an interruption of representation. Our order for a rehearing runs to The Judge Advocate General and from him to convening authorities through well established channels, all under the sanction of the statutory and military relationships involved. A case may be dismissed below, but no result adverse to an

accused can occur without a proceeding in which he has counsel or has made a waiver thereof a matter of record subject to our review.

As to the familiarity-with-the-case argument, appellate counsel may be more aware of the legal issues initially. However, everything is a matter of record, easily mastered by ordinarily competent counsel below. Local counsel is an imperative in any case, if only for administrative and logistical support to out of town counsel. What is left as an advantage to permitting appellate counsel to conduct supplementary proceedings is the speculative superiority of appellate counsel over experienced trial counsel in the trial forum. Considering that fewer than 30% of presently assigned appellate counsel have had any military trial level experience, the possible advantage to accused persons is hard to discern.

■ We conclude that the actions in this case and military practice generally conform to the Standards discussed above. The Standards are a fair reference because nothing in our military law suggests a more rigid rule. An appellant may discharge appointed counsel and be entitled to another appointment, *United States v. Bell*, 11 U.S. C.M.A. 306, 29 C.M.R. 122 (1960), but he has no right to select his trial defense counsel to represent him on appeal. *United States v. Patterson*, 22 U.S.C.M.A. 157, 46 C.M.R. 157 (1973). Thus, neither military case law nor modern standards of adequate representation require the continuity of representation asserted by appellant here as of right.

### III

■ Appellant's initial request for individual counsel also differed from the customary request in that he requested appellate counsel, rather than a designated defense counsel in the field or a military attorney regularly assigned to duties less specifically keyed to the administration of criminal justice. He now asserts a right to the appointment of such counsel from either or both Article 38 and 70 of the Code.

Appellant's request that his military appellate counsel be designated individual

counsel should have been decided on the preemptive grounds that appellate counsel are not "available" for such duties as a matter of law. We suggest by this no general limitation on the right of accused persons to request individual military counsel at such proceedings pursuant to Article 38. However, we do say that the pool of potential counsel made available by that Article does not include those relatively few officers assigned to the appellate counsel divisions created pursuant to Article 70. (We limit our further discussion to the defense element for convenience.)

The preemptive rule just stated flows from the special and specific nature of the military unit known as the Defense Appellate Division of the U.S. Army Legal Services Agency. That Division is part of the Office of The Judge Advocate General of the Army and its personnel are limited by statute, the *Manual* and regulations to ". . . representation of accused before appellate tribunals in accordance with the provisions of Article 70, UCMJ and paragraph 102, Manual for Courts-Martial." Paragraph 11a, JAGO Regulation 10–4 (27 May 1975). [Presently paragraph 12a, JAGO Reg. 10–4 (23 April 1976).]

Although some of the language of Article 70 might appear broad enough to permit some of the actions asserted by appellant as possible, such extension of the duties of appellate division officers would counter the express understanding of Congress at the time Article 70 was enacted. In presenting his draft of Article 70, Mr. Felix Larkin said:

"This article is new and is included in the code in order that the accused may be represented on review. Such representation will assure that the accused's case will be thoroughly considered." [Further portions of the legislative history of Articles 38 and 70 are quoted and cited in *Bell* and *Patterson*, both *supra*. We find those portions supportive of the point made here and will not repeat them.]

The language offered by Mr. Larkin was that ultimately enacted. His comment

shows the purpose of Article 70 clearly; it was to implement the newly established procedures for appellate review.

Passing by the question whether The Judge Advocate General could lawfully have deviated from his own regulation to grant appellant's request, we reach a consideration of the sound reasons for the difference between Article 38 and Article 70. The fact of the difference, i. e., the absence from Article 70 of a stated right to select appellate counsel does not *per se* establish the immunity of officers assigned to the Defense Appellate Division from service as requested counsel under Article 38(b). Rather, that immunity is derived from the reasons for the creation of the separate appellate counsel unit to serve the newly established military appellate tribunals. Simply put, the legislative purpose would be totally frustrated were the handful of appellate defenders to be decimated by calls for long absences in the 70 active trial jurisdictions of a world-wide, but peacetime, Army. We will not speculate about the wartime impact, except to note that the number of jurisdictions would increase at the approximate rate of 10 per each Corps mobilized. A judge advocate general who made appellate counsel subject to substantial diversions from the duties contemplated by Article 70 could be attacked for less than full compliance with the legislative mandate.

Congress was not faced with the problem of appellate delay when Article 70 was enacted, but we are. Given that the eight defense requests for enlargements of time before this case reached us were not altogether unusual, it is clear that the system can ill afford drains on the limited resources available by way of appellate counsel. Although we cannot say that Congress had this problem in mind when it enacted Article 70 so patently different from Article 38, we are sure that the legislative concept encompassed this type of problem. That concept is untenable without the principle of the exclusivity of the services we derive from the enactment and implementation of Article 70.

We hold that the officers assigned to the Defense Appellate Division are not available for selection as individual military counsel pursuant to Article 38(b), and that there is no additional right to such selection in Article 70. Therefore, appellant was not denied any representation to which he was entitled.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge DONAHUE concurs.

CLAUSE, Senior Judge, concurring in part:

I concur in the conclusion that the requested counsel was not reasonably available within the meaning of Article 38(b), UCMJ. I agree with the majority that there are valid practical considerations as well as legal reasons for concluding that Article 70 has the effect of exempting appellate counsel from those "military counsel" available for consideration under Article 38(b). As I consider this interpretation of Article 70 a matter of substantial significance and one of first impression, I would await a case in which resolution of this question was the only alternative to disposition of the case.

I do believe, however, that legislative action to remove appellate counsel from the pool of military lawyers generally considered available for request pursuant to Article 38(b), is fully warranted and would provide the best resolution of this legal issue. Such legislative action should likewise remove from consideration those military lawyers serving in judicial roles, as well as those serving in statutory positions whose required statutory functions should preclude them from acting as counsel for an accused.