UNITED STATES, Appellee

v

LLOYD GEORGE BELL, Recruit, U. S. Army, Appellant

11 USCMA 306, 29 CMR 122

No. 13,345

Decided March 11, 1960

*Lieutenant Colonel Ralph Herrod* argued the cause for Appellant, Accused. With him on the brief was *Colonel Harley A. Lanning*.

*First Lieutenant Allen I. Saeks* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. Mc-Conaughy* and *First Lieutenant Paul R. Walsh*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The single issue upon which we granted review in this case has to do with the representation which must be afforded an accused at the time of his hearing before a board of review. Unfortunately, the record shows an obstreperous accused who, with the aid and assistance of his sister, succeeded in goading a board of review and Army officials to proceed in a way which we believe may be at variance with proper procedure. We are not going to relate all of the exasperating activities of the accused, for that would serve no good purpose. Suffice it to say that his conduct caused two qualified defense counsel to request relief from assignment to avoid compromising their standings as lawyers and, unless he changes his tactics, a successor will fare very little better. But in spite of his behavior and our reluctance to aid a person who believes he has the right to pick and choose assigned counsel as his whim dictates and demand that they present arguments which in good conscience and consistent with the ethics of their profession they feel they cannot, nevertheless, in order to avoid the remote possibility he might have been denied some right, we are going to afford him one last chance to have a military lawyer appointed by The Judge Advocate General of the Army represent him before a board of review. If this appointment is rejected without good cause, he must either employ civilian counsel forthwith at his own expense or suffer the consequences of being unrepresented before the board of review. So ██ there will be no misunderstanding of our position on the new appointment, we quote and adopt this language found in State v Rinaldi, 156 A 2d 28, 30 (1959):

". . . It is enough that the attorney assigned to the appeal is qualified to represent the prisoner, and that he has advised with him and done whatever possible to represent him competently. Counsel is not required to dance to the prisoner's tune.

"Those unfortunate enough to be caught up in the web of the law and who, mistakenly or not, consider themselves aggrieved must disabuse themselves of the notion now prevailing in certain prison circles that they may accept or reject assigned counsel, as whim or scheme dictates. The right to assigned counsel is not the right to pick an attorney of one's own choosing, nor the right to select counsel who will completely satisfy a defendant's fancy as to how he is to be represented."

The reason we are taking this unusual step is to clear up an area of doubt and because we have some reservations about the procedure adopted by the board of review when it permitted counsel to withdraw. Under Article 70, Uniform Code of Military Justice, 10 USC § 870, The Judge Advocate General of

the respective service is required to appoint officers of certain qualifications to act as counsel on appeal. Those officers designated as appellate defense counsel by The Judge Advocate General have the duty to represent an accused before the board of review when he requests representation. In the case at bar, the accused submitted an appropriate request, and two qualified and experienced counsel were assigned. The officers designated attempted to perform their tasks, but difficulties arose when they were requested to make certain assignments of error before the board of review which they considered inappropriate. They sought to straighten out the difficulty, but without success. Thereafter, the accused communicated directly with the board of review and requested that it discharge the assigned officers, and they filed a petition requesting permission to withdraw. Prior to acting on this petition, the board of review directed a communication to the office of The Judge Advocate General of the Army, apparently asking whether other counsel would be appointed in place of those then acting, and it was informed that if the accused refused to accept the services of the two appointed lawyers, no other attorney would be made available. The board nevertheless relieved the officers of the assignment and, without timely notice to the accused, proceeded to hear and decide the matter.

It was at this point in the proceedings where we believe the board of review committed error. Unquestionably, Article 70 of the Code, supra, designates The Judge Advocate General of the service as the officer authorized to appoint appellate counsel, and it may well be that for good cause he can refuse to furnish substitute lawyers—a point we need not decide—but once an attorney appears in the case, a board of review has the authority to pass on his right to be relieved. In deciding that issue, it should not authorize the withdrawal of all defense counsel without taking some measures to protect the rights of an accused to representation. Here the board of review had received a request from the accused to dismiss the officers from further participation in the case, but the board was not compelled to honor that prayer for relief. Neither was the board required to act favorably on counsel's request to withdraw. When the impasse developed, one solution available to the board was to direct the accused to file his own assignments of error and order military counsel to state the errors they thought were appropriate. The latter could then have appeared to argue any of the assignments they considered meritorious. In that way both counsel and accused are protected. And while that method keeps counsel in the case over the protest of the accused, it is to his advantage for they are present to protect his rights and it is hardly feasible for him to represent himself on appeal and in absentia. However, if an accused protests against such an order and insists on firing his appointed lawyers, he cannot later complain if the board concludes not to require counsel to remain in the case, for an accused who is sane can always forfeit his right to representation before the board, and actions showing an arbitrary and calculated refusal to accept appointed counsel may constitute an abandonment of that right. Congress granted the accused the privilege to be represented by qualified counsel, but it did not authorize him to dictate to a board of review or The Judge Advocate General of the service, or to choose his own appointed counsel. If he proceeds on the theory that he can arrogate unto himself the right to choose his own military lawyer, he runs the risk of not being represented for, barring some showing by him of the unsuitability or incompetency of appointed counsel, he can be required either to accept the representation made available or to wage his appeal alone. There is a limit beyond which military authorities need not go and if an accused becomes unreasonable in his demands, he may forfeit his right to any assistance. But the difficulty with supporting the action of the board on this theory arises from the fact that it failed to accept its responsibility and rule on the issue of accused forfeiting his right to representation

**309**

until it was too late for him to protect his rights.

This brings us to another solution which could have been used by the board to bring the issue within the sweep of its authority. As the record stands, it appears that the board may have placed too much reliance on the decision of the Director of Military Justice, the Chief of the Defense Appellate Division, or others in the office of The Judge Advocate General. As previously indicated, the power to appoint counsel is vested in the The Judge Advocate General. But the board controls its own hearings and it makes the final decision on matters properly before it. Here it sought advice from the office of The Judge Advocate General on the appointment of substitute counsel, but it could have gone further than solicitation. It could have requested the appointment of other counsel if the members were of the opinion that the accused should be represented by someone other than the original appointees. Had the request been denied, the board could have refused to hear the case until counsel was detailed. We mention this possibility to strengthen the hand of the boards of review should the occasion arise, although we are convinced the situation is not likely to develop, for most accused persons are grateful for the free representation and seldom is there a complaint on the selection. However, if an accused makes a demand which is reasonable and it is refused by The Judge Advocate General, the board of review could bar a hearing until representation is furnished.

This brings us to the real crux of this case. Apparently the board of review pursued the course it did because it was convinced the accused was unreasonable and was merely trying to bend his lawyers and the processes of the board to the dictates of his command. In such a situation, a board is faced with a delicate situation, but we have no doubt that if the board proceeds properly it may release the lawyers and proceed without requiring the Government to furnish other counsel. However, further action should be

**310**

stayed for a period adequate to allow service upon the accused of the order permitting counsel to withdraw, and giving him sufficient time to meet the new situation. In the order releasing counsel, there should be included a notice that different military counsel will not be made available to accused and he must either represent himself or obtain civilian counsel. Unfortunately, the action taken by the board of review in the case at bar does not quite meet these requirements. While the board of review exhibited a certain amount of solicitude for the rights of the accused once it determined to relieve counsel, it should have made certain that notice of its order was served on him in time to permit him to act before the case was decided. The following sequence of events, which merely touch on the surface of this attorney-client dispute, will show our reasons for reaching that conclusion. After several prior continuances, on April 28, 1959, the board issued an order enlarging the period of time for the accused to file assignments of error. This order contained the caveat that, unless they were filed by May 11, 1959, the board would proceed to examine the record of trial and render its decision. Nothing was said in the order concerning the possible relief of counsel. Apparently, this order was not served on the accused personally, but the record before us indicates his counsel were notified, and in turn they apprised him of the ruling and sent him a copy of the order. The assignments were not submitted as ordered by the board; however, on May 12, 1959, defense counsel filed a motion to withdraw and on May 18, 1959, the motion was granted. The bases for the withdrawal were letters of the accused dated May 7 and May 8, 1959, in which he requested that appellate counsel be discharged. In the board order of May 18, 1959, it was provided that the case would proceed without counsel, and that order was served on the accused, a copy thereof being mailed to him the same day. Four days later, on May 22, 1959, the board rendered its decision on the merits, affirming the findings and sentence. We believe that when the board decided to relieve the attorneys and proceed with-

out the accused being represented, it should have notified the accused of those facts and afforded him some reasonable time to obtain other representation. We conclude four days is not adequate for that purpose, particularly when accused is confined at Leavenworth, Kansas, and counsel are stationed in Washington, D. C. True it is the board had previously placed a burden on accused to file assignments of error by a given date under penalty of the board proceeding to decide the case, but nothing was said at that time by the board about loss of representation, and the accused was not put on notice until sometime after May 18, 1959, that his counsel had been discharged. The petition to be relieved was filed by the attorneys after the last date set for filing assignments of error and while that would not necessarily extend the time, it initiated a new form of proceedings and accused was entitled to timely notice of the action taken. His demand for removal was accompanied by a request for other counsel and while the board was not compelled to meet his demands, he should have been informed of the refusal in time to protect his interests. It, therefore, appears to us that the board of review overlooked the fact that its order was changed from one requiring the accused to submit assignments of error to one relieving counsel and that notice of the former was not notice of the latter. While it may be argued that accused should have known his counsel would be released because he wrote the board of review asking for this form of relief, it is to be noted he was insisting on his right to be represented and it does not follow that he is chargeable with knowledge that he was to be without the benefit of other counsel. In this connection, we have not overlooked the assertion that he was informed by the appointed defense counsel, the Director of Military Justice, and others, that substitute attorneys would not be designated if he rejected those originally detailed. But that argument misses the mark in that those persons do not speak for or control the decisions of the board of review, which is the agency charged by law with determining the rights of the accused. He is not compelled to have his rights adjudicated by others, and we know of no authority for third persons to prophesy future orders of the board. So far as the board of review was concerned, the accused asked for dismissal, the lawyers petitioned to withdraw, and that set the issue. The board alone could decide the question, and accused was entitled to notice of the decision after it was rendered. This he may have received, but it was mailed too late to be of any value to him. Accordingly, we believe the board of review acted too hastily when it decided the case with only four days intervening between the date its order was mailed and the day its decision was rendered.

For the foregoing reasons, the decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Army with directions to refer the matter to a board of review for further hearing and to appoint counsel to represent the accused at the hearing.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

While I agree with the conclusion of my brothers that this cause must be returned to the board of review for a new hearing at which the accused is entitled to be represented by counsel appointed by The Judge Advocate General of the Army, I do not think it at all wise now to advise the accused that he may not reject his new representative unless he desires to "suffer the consequences of being unrepresented before the board of review." That issue is simply not before us, and we should not foreclose consideration of what may become a very real and substantial question in the future. Accordingly, I disassociate myself from this prescient declaration and pass to the granted issue.

The accused was found guilty of desertion, in violation of Uniform Code of Military Justice, Article 85, 10 USC § 885, and sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years. The convening authority approved the findings and sentence.

The record of trial was forwarded to The Judge Advocate General of the Army for review by a board of review, and appellate defense counsel were duly appointed to represent the accused. Thereafter, a controversy arose between counsel, the accused, and his sister. As Judge Latimer points out, it was largely occasioned by Bell's attitude and the interference in the case of his relative. Some fault can, nevertheless, be laid at counsel's door, for the record before us does not disclose that they undertook to inform accused of the ethical requirement for a direct, personal relationship between an attorney and his client. Canon 35, Canons of Professional Ethics. Rather, they seemingly permitted accused's sister to assume an increasingly important role in the case until she, not unnaturally, sought to assume control of the defense. I suggest that the entire problem might have been avoided had counsel from the beginning firmly insisted upon dealing only with their client and relegated the members of his family to their proper position.

Be that as it may, matters soon came to a head, and, upon accused's request, counsel withdrew from the proceedings. Bell was informed it was the policy of The Judge Advocate General under such circumstances, not to appoint new appellate counsel. Subsequently, the board of review heard his case without representatives appearing for him.

The principal opinion disposes of the issue before us on the basis that the board of review erred prejudicially in failing to afford accused notice of its relief of his assigned counsel and its subsequent hearing on the merits of his case. I believe that this is no more than an ancillary question, and I prefer to dispose of the issue by inquiry into the more basic proposition whether, under the demonstrated circumstances, The Judge Advocate General may properly refuse to appoint new counsel to represent the accused. I think it is clear that he cannot.

Code, supra, Article 70, 10 USC § 870, provides pertinently:

"(a) The Judge Advocate General *shall detail in his office* one or more commissioned officers as appellate Government counsel, and *one or more commissioned officers as appellate defense counsel,* who are qualified under section 827(b) (1) of this title (article 27(b) (1)).

. . . . .

"(c) *Appellate defense counsel shall represent the accused before the board of review* or the Court of Military Appeals—

(1) when he is requested to do so by the accused;

(2) when the United States is represented by counsel; or

(3) when the Judge Advocate General has sent a case to the Court of Military Appeals." [Emphasis supplied.]

If the mandatory language of the foregoing statute does not in itself require the conclusion that The Judge Advocate General appoint counsel to represent the accused, reference to its legislative history will suffice to remove any lingering doubts:

"Senator KEFAUVER. Does the accused have the right of selection of his own attorney in the proceedings before a Court of Military Appeals?

"Mr. MORGAN. Civilian counsel? Certainly, sir; if he wants civilian counsel, and if he doesn't then we have set up in the Judge Advocate General's office, appellate counsel, *and defense counsel who must appear for him.*

. . . . .

"Senator KEFAUVER. Who is the appellate Government counsel and who selects the counsel?

"Mr. LARKIN. The Judge Advocate General will select the Government counsel from his own staff—the people in his office—where there is to be such an argument.

"The accused may have his own or have civilian counsel represent him before these appellate tribunals. But if he does not, *then the judge advocate will appoint an officer from his office to defend or at least present the accused's side of the case.*" [Hearings before Senate Armed Services

Committee on S. 857 and H. R. 4080, 81st Congress, 1st Session, pages 56, 290.] [Emphasis supplied.]

The foregoing excerpt emphasizes it was the intent of Congress to insure that the accused was represented on appeal by counsel designated by The Judge Advocate General and that the statute admits of no exceptions based simply upon the policy determinations of that officer. Indeed, it would be ruinous to the public defender concept thus enacted by Congress to permit The Judge Advocate General to refuse to appoint new legal representatives for the accused only because there had been a tactical disagreement between the parties. Experienced attorneys know that controversies frequently develop with their clients. In the absence of fraud or similar considerations, an attorney must normally present the contentions of the person whom he represents. United States v Oakley, 25 CMR 624, and cases collected therein. To say that appointed military counsel have so much authority in the case that an accused may refuse their advice only at the peril of being denied representation places too narrow an interpretation upon the attorney-client relationship and the accused's Congressionally declared right to have an advocate appear on his behalf. Of course, there must come a time when it is reasonably apparent that an accused's good faith in repeatedly rejecting his counsel may be questioned. In such circumstances, however, The Judge Advocate General and the boards of review are not powerless. Counsel may be appointed and directed to argue such errors before the board as he deems meritorious. Those which he cannot in good conscience urge upon the appellate body may, if not dishonest, be properly assigned simply on behalf of the accused. Dishonesty, however, does not mean mere disagreement. If the accused requires counsel either to urge his contentions or to withdraw from the case, perhaps the time will soon arrive when the orderly administration of justice will demand that the board nevertheless proceed to hear the cause. In my opinion, however, Congress did not intend the defendant's right to representation to be so circumscribed that those charged with administering Code, supra, Article 70, may at once insist that the accused either accept the counsel initially appointed or secure a civilian attorney.

In sum, then, I am convinced that The Judge Advocate General erred in failing to appoint additional appellate counsel to represent the accused. As the board of review proceeded to a hearing of the case without any appearance on his behalf, prejudice is apparent. Resolution of this question serves to dispose of the appeal, and I believe that we need not now delve into the issue whether the accused was entitled to a hearing before the board on the action of The Judge Advocate General or warn the accused with respect to the degree of relief to which he may be entitled in the future.

As the opinion of my brothers orders a new hearing on the merits before the board of review and the appointment of counsel for the accused, I concur in the disposition which they direct.