UNITED STATES, Appellee

v

FLOYD JORDAN, Specialist Four, U. S. Army, Appellant

22 USCMA 164, 46 CMR 164

No. 25,993

March 2, 1973

*Captain Michael A. Mason* argued the cause for Appellant, Accused. With him on the brief was *Colonel Arnold I. Melnick.*

*Captain James F. Motley* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas B. Burns, III, Captain Richard L. Menson,* and *Captain Stan L. Spangler.*

QUINN, Judge:

Despite a plea of guilty and a sentence less than that adjudged at trial and provided in a pretrial agreement with the convening authority, the accused contends that his conviction for larceny and two specifications of robbery, in violation of Articles 121 and 122, Uniform Code of Military Justice, 10 USC §§ 921 and 922, respectively, should be reversed because he was deprived of "his right to be represented by civilian counsel provided at his own expense."

At an Article 39(a) session held before convening of the court, the accused appeared before the trial judge accompanied by a white civilian attorney, Stephen B. Hrones, Esquire, who had represented him earlier at the Article 32 investigation. He indicated that he wanted to be represented by Mr. Hrones at the trial and that he did not desire the appointed defense counsel as associate counsel. He further indicated that he wanted "a black military lawyer to go along with Mr. Hrones." Responding to remarks by the judge as to the scarcity of black military attorneys at the place of trial, Frankfurt/Main, Federal Republic of Germany, he admitted that he knew there were "very few black lawyers available in Europe," and that a continuance for the purpose of determining the availability of a black lawyer could extend his pretrial confinement. He also conceded that if a black lawyer was unavailable, he "might wind up right where . . . [he was] today." Still, he persisted in his desire for a black attorney.

The judge noted that only two qualified black military lawyers were in Europe and his experience in other cases indicated that they were "eminently unavailable" for appointment as defense counsel. Considering the possibility of appointment of a black lawyer as individual military counsel, the judge pointed out that, as the accused had civilian counsel of his own choice, he did not "have the right to an individual military counsel."

Mr. Hrones disputed the correctness of the judge's observation. He maintained that the accused had a legal right to both civilian counsel and individual military counsel of his own choice, subject only to the latter's availability for assignment. After a conference with the accused, he informed the judge that the accused had "chosen to fire" him because he wanted a black lawyer and "had no other alternatives to effectively pursue" his request for such a lawyer. The accused personally confirmed the "firing," and Mr. Hrones left the courtroom. Thereupon, Chaney, a co-accused, represented that he, too, wanted a black military lawyer. The trial judge granted a continuance to June 14 to both accused to allow each to request a black lawyer as individual military counsel.

Several lawyers selected by the accused were deemed to be unavailable. On June 2, he requested Captain Thompson, who was then stationed at Fort Riley, Kansas. Captain Thompson was available and was assigned as individual military counsel. On June 14, he appeared with the accused at the reconvened Article 39(a) session. Chaney appeared with another black military lawyer. The accused informed the trial judge that he wanted to be represented by Captain Thompson, without the assistance of "anyone else," and that he consented to the absence of the appointed defense counsel. Later, he indicated he proposed to enter a plea of guilty in accordance with a pretrial agreement with the convening authority, which had been negotiated with the assistance of Captain Thompson.

■ Although an appellate court will not ordinarily engage in "nice calculations" of prejudice when an accused has been denied his right to counsel, it is difficult if not impossible to perceive any basis of prejudice to the accused. See United States v McFadden, 19 USCMA 412, 42 CMR 14 (1970); United States v Winchester,

12 USCMA 74, 30 CMR 74 (1961). The accused does not contend that civilian counsel would, or could, have proceeded differently than Captain Thompson proceeded; nor does he contend that the pretrial agreement he entered into with the assistance of Captain Thompson was mistaken in law or fact, or even ill-advised. Additionally, it is not contended that the results achieved by Captain Thompson were less favorable than the accused personally regarded as fair or attainable with civilian counsel. The unavoidable conclusion, therefore, is that the accused had exactly the kind of legal representation he wanted and that he received exactly the kind of disposition of the case he deemed obtainable and in his best interest. The Court of Military Review below so found. The importance of the question to military practice requires, however, that the issue not be decided on the basis of prejudice.

Military law provides for automatic appointment of defense counsel for an accused subject to trial by general court-martial. Article 27, UCMJ, 10 USC § 827. In addition, an accused can select counsel of his choice. In this regard, the practice is different from that in the civilian courts where the accused's right to appointed counsel depends upon his financial inability to retain counsel. An accused in the civilian community, therefore, has no choice between appointed counsel and personally selected counsel; for him, it is either one or the other, depending upon his financial resources. A military accused has a choice.

Article 38(b) of the Uniform Code provides as follows:

"The accused has the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available or by the defense counsel detailed under section 827 of this title (article 27). Should the accused have counsel of his own selection, the defense counsel, and assistant defense counsel, if any, who were detailed, shall, if the accused so desires, act as his associate counsel; otherwise they shall be excused by the military judge or by the president of a court-martial without a military judge."

Appellate defense counsel acknowledge that under the usual rules of statutory construction the word "or" is presumed to be used in the disjunctive sense, unless the legislative intent is clearly to the contrary. United States v Chilcote, 20 USCMA 283, 43 CMR 123 (1971). So construed, Article 38(b) confers two options upon the accused as to personal selection of available counsel. One option is to select civilian counsel at his own expense, and excuse or retain the appointed defense counsel as "associate counsel." The other option is to have individual military counsel free of charge, and excuse or retain appointed defense counsel as associate counsel. Appellate defense counsel also contend that "it is clear that Congress intended the word ["or"] to be read as the conjunctive 'and.'" No legislative report or dicussion is cited to support the contention, but several alleged intolerable consequences of a contrary construction of Article 38(b) are advanced as evidence of the requisite legislative intent.

It is asserted, first, that to construe the article as conferring an alternative right to personally selected counsel would permit the trial judge "to refuse to allow a civilian lawyer to . . . defend an accused who was already represented by an individual military counsel." The contention misconceives the effect of accused's representation by counsel at a particular stage of the court-martial proceedings.

Establishment of an attorney-client relationship is not immutable or irrevocable. An accused can always discharge his lawyer. United States v Goodson, 1 USCMA 298, 3 CMR 32 (1952); United States v Howell, 11 USCMA 712, 29 CMR 528 (1960). The right is absolute if the accused elects to proceed without any counsel,

United States v Bell, 11 USCMA 306, 29 CMR 122 (1960); it is qualified, if he desires to substitute another attorney for the one discharged, with the qualification being that the request for substitution of counsel cannot impede or unreasonably delay the proceedings. United States v Vanderpool, 4 USCMA 561, 16 CMR 135 (1954). In fact, appellate defense counsel concede that the trial judge can deny a request for a continuance, if the delay sought is unreasonable. United States v Kinard, 21 USCMA 300, 45 CMR 74 (1972). Cf. United States v Potter, 14 USCMA 118, 33 CMR 330 (1963). Consequently, an accused who decides to retain civilian counsel on the day of trial may properly be denied a continuance if the delay is unreasonable. In that event, it is not Article 38(b) that would require the accused to proceed without civilian counsel, but his own procrastination.

A second major argument advanced against construing the right to personally selected counsel in the alternative is that the conventing authority could arbitrarily deny a request for individual military counsel if, at the time of the request, the accused was already represented by civilian counsel. The argument overlooks another aspect of the general right to counsel. As the judge pointed out at trial, an accused can request a named military lawyer in place of the appointed defense counsel. The burden of establishing good cause for such substitution is on the accused. See United States v Bell, supra. Absent a request for substitution of appointed defense counsel, and represented by both civilian counsel and at least one appointed military lawyer, the accused's desire for another individual military counsel would indeed be a privilege. There is no constitutional provision for, and no reason in logic or sound practice to justify, appointment of a third lawyer for the trial merely because the accused desires one. Some cases may be so complex or involved as to be too much of a burden for one lawyer. For such cases, the Manual for Courts-Martial suggests the appointment of an appropriate number of assistant counsel. MCM, 1969 (Rev ed), paragraph 6. We suppose defense counsel, military or civilian, and appointed or personally selected, can request the appointment of additional assistant counsel. A request for such assistance is not the same as a right to select military counsel by name.

We have examined the subsidiary contentions of the defense, including the charge that an "appearance of evil" would pervade the military justice system if Article 38(b) is construed contrary to his view, and we remain unpersuaded that any of them justifies disregard of the plain language of Article 38(b). As we indicated earlier, military law gives greater scope and flexibility to the right to counsel than is accorded the right in constitutional terms in the civilian criminal justice system. We see no evil, and we fear no evil, in construing Article 38(b) according to its plain language.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge DUNCAN concur.