# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
**Washington, DC**

## UNITED STATES
**v.**
**William P. JENNINGS**

### Seaman Recruit, U.S. Coast Guard

**CGCMS 24102**
**Docket No. 1043**
**4 September 1998**

Special Court-Martial convened by Commanding Officer, U.S. Coast Guard Support Center New York. Tried at Building 333, Governors Island, New York, New York, on 11-13 July 1994.

| | |
|---|---|
| Military Judge | CDR Walter J. Brawand, USCG |
| Trial Counsel | LCDR Brian Judge, USCG |
| Assistant Trial Counsel | LT Jon G. Beyer, USCG |
| Original Detailed Defense Counsel | LT Thomas Sparks, USCG |
| Individual Military Counsel | LT Edward J. Cook, JAGC, USNR |
| Substitute Defense Counsel(Post Trial) | LCDR Jeffrey C. Good, USCG |
| Second Substitute Defense Counsel(Post Trial) | LT Barbara S. Hundley, JACG, USN |
| Appellate Defense Counsel(1st Brief) | LCDR Allen Lotz, USCG |
| Appellate Defense Counsel (2nd Brief & Argued) | LT Richard R. Beyer, USCGR |
| Appellate Government Counsel | LT William G. Rospars, USCG |

**BEFORE**
**PANEL FOUR**

**BAUM, KANTOR, AND WESTON**
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by a special court-martial, military judge alone. Contrary to his pleas, he was convicted of the following offenses: one specification of unauthorized absence, one specification of willfully disobeying a lawful order, one specification of larceny, three specifications of assault, and one

specification of disorderly conduct, in violation of Articles 86, 90, 121, 128, and 134 of the Uniform Code of Military Justice (UCMJ), 10 USC §§886, 890, 921, 928, and 934, respectively. The judge sentenced appellant to reduction to pay grade E-1, forfeiture of $400 pay per month for six months, confinement at hard labor for five months, and separation with a bad conduct discharge. On 19 December 1994, the convening authority approved the sentence. This Court set aside that action on 5 July 1996 and returned the record for a new convening authority s action based on an erroneous recommendation of the staff judge advocate which resulted in Appellant serving additional unlawful confinement. Subsequently, on 4 March 1997, the convening authority disapproved the unauthorized absence conviction and dismissed that specification. He then approved a sentence that included reduction to pay grade E-1, confinement for five months, and a bad conduct discharge, but did not include the adjudged forfeitures of $400 pay per month for six months.

Before this Court, appellate counsel has assigned six errors, in addition to reasserting previously submitted personal assertions by Appellant under *U.S. v. Grostefon*, 12 M.J. 431 (CMA 1982). Moreover, counsel has moved that any issues raised in errors assigned on
25 August 1995 by the previous appellate counsel, which may not be included in the latest briefing, be incorporated by reference for this current review. That motion is granted. Counsel has also moved for an evidentiary hearing pursuant to *U.S. v. Dubay*, 17 USCMA 147, 37 CMR 411 (1967). That motion is denied. The previously assigned errors were noted in our opinion returning the record to the convening authority. Those that have not been included in the current briefing and have not been mooted by action on earlier remand of the record have been considered by the Court and are deemed to be without merit. The six most recently assigned errors, three of which were orally argued to the Court, have also been considered and are addressed below. Lastly, although not assigned as errors, this case raises a number of questions concerning the representation of Appellant before this Court which we have also addressed.

## Assignments of Error

The first three assignments of error relate to an order barring one of the civilian assault victims from Governors Island, the site of the court-martial. That order was issued by the convening authority in his capacity as Commanding Officer, U.S. Coast Guard Support Center, Governors Island, New York, shortly after the assault and its accompanying disturbance occurred on Governors Island. Appellate counsel contends that the convening authority s failure to retract or modify this order constitutes unlawful interference with access to a witness. Furthermore, he asserts that it was prosecutorial misconduct for the trial counsel not to inform the military judge of that order when asked about the circumstances of the victim s absence from trial as a witness. Counsel also asserts that the facts of record create an inference of a *sub rosa* agreement between trial counsel and defense counsel not to inform the judge of the order barring the victim from the Island, such that the Court should order a hearing pursuant to *U.S. v. Dubay*, supra, to look into the matter. We see nothing whatsoever to infer that such an agreement existed, and, accordingly, have denied the requested *Dubay* hearing.

As to the other assignments relating to the witness s non-appearance at trial, the record clearly reveals a legitimate basis for the Commanding Officer s order barring the individual from Governors Island after her altercation with Appellant and the disturbance that it caused. That order was issued long before the

referral of charges to trial. After charges were referred, the Government issued a subpoena for her appearance and purchased her a plane ticket, but she refused to come. When the defense offered in evidence a favorable written statement from this woman, to which the Government objected, a discussion ensued as to her availability. The trial counsel indicated that there were other possible options for obtaining her presence such as a warrant of attachment, but, after further discussion of the matter between trial counsel and defense counsel during a recess, both agreed that the witness would ultimately refuse to testify and, therefore, was unavailable. Trial counsel s concession to this effect allowed the admission in evidence of defense s written statement from her. We are convinced beyond any doubt that the earlier order barring this individual from Governors Island had absolutely no bearing on her decision not to testify. That order was superseded by the subpoena to appear. It was her unwillingness to testify, not the order, which interfered with her availability as a witness. There was no error or misconduct in failing to inform the judge of the order. The three assigned errors relating to this matter are rejected.

The remaining assignments of error assert that individual military counsel abandoned his role as counsel and was ineffective within the meaning of *U.S. v. Scott*, 24 M.J. 186 (CMA 1987), both during trial and post-trial; that the only meaningful relief at this stage for six days of illegal post-trial confinement is a set-aside of the bad conduct discharge; and that the findings and sentence should be set aside to remedy the harm suffered by the service of a disqualified assistant trial counsel. Applying the standard for assessing performance of counsel from *U.S. v. Scott*, supra*,* and *Strickland v. Washington,* 466 U.S. 668 (1984), we find that the defense has failed to show that trial defense counsel was not functioning as the counsel guaranteed by the Constitution s Sixth Amendment. With respect to the contention concerning six days of illegal post-trial confinement, meaningful relief has already been provided for that error by the convening authority, who disapproved all of the adjudged forfeitures, upon remand of the record.

The last assignment of error asserts that the assistant trial counsel was disqualified from acting in that capacity because of Article 27(a)(2), UCMJ, which states that "no person who has acted as investigating officer, military judge, or court member in any case may act later as trial counsel [or] assistant trial counsel)." Appellate counsel contends that the assistant trial counsel s action as a summary court-martial with respect to the instant charges, which were initially referred to summary court-martial, constituted action as a military judge within the meaning of Article 27(a)(2). In making that argument, counsel cites R.C.M. 103 for the proposition that action by a summary court-martial officer equates to that of a military judge. R.C.M. 103(15) does state: "Except as otherwise expressly provided, in the context of a summary court-martial "military judge" includes the summary court-martial officer)." Assuming, without deciding, that this provision causes the Article 27(a)(2) proscription to apply to a summary court-martial officer, corrective action would be governed by *U.S. v. Wright*, 2 M.J. 9 (CMA 1976).

*Wright*, supra, holds that a trial counsel s lack of qualification to act as such does not deprive a court-martial of jurisdiction. It is a matter to be tested for prejudice. In making that test, Appellate counsel submits that the findings and sentence should be set aside and cites *U.S. v. Webster*, 33 CMR 684 (1963) as authority for that proposition. In *Webster*, trial counsel was found to be disqualified because he had been previously designated as the summary court-martial to try the accused and the findings and sentence were set aside for that reason. That was a Coast Guard special court-martial, but the cited opinion was not that of either a court of military review or a board of review. Instead, it was the published action of the

Treasury Department s General Counsel acting as Supervisory Authority in the case. Such actions are not binding precedents for this Court. We will independently test for prejudice as contemplated by *U.S. v. Wright*, supra. Having made that test, we find no prejudice from the participation in this case of the assistant trial counsel. Accordingly, this last assignment of error, together with the two previously discussed, are rejected.

**Appellate Representation**

Appellant, who was found to be mentally competent prior to trial, has had a confused and sometimes turbulent relationship with the counsel who have been assigned to represent him, refusing to communicate at all with the military appellate counsel who filed the aforementioned assignments of error. Clearly, without any communication between counsel and client, a formal attorney-client relationship has not been established. *U.S. v. Miller*, 45 M.J. 149 (1996). Nevertheless, detailed appellate counsel submitted the previously addressed assignments of error and orally argued to the Court on Appellant s behalf. Of necessity, before considering those submissions, this Court had to decide whether detailed counsel could speak for Appellant as his representative, and, if not, on what basis we could consider the assignments of error and argument of counsel. The factual background is essential to these determinations.

This accused has had six different counsel detailed by the Government to represent him since the charges were referred to a special court-martial in 1994. Two counsel were assigned before trial, two after trial to assist him with regard to action by the convening authority, and two for representation before this Court. At one point or another, all counsel have encountered problems with Appellant, and, from the very beginning, he indicated his intent to hire civilian counsel, but has failed to do so. He rejected his first detailed counsel before trial commenced, but not before that counsel requested a delay in order for Appellant to obtain individual military counsel and civilian counsel. An individual military counsel was provided, as requested, and Appellant met briefly with a civilian attorney, paid a portion of a retainer fee, but never completed a hiring arrangement. Thereafter, Appellant went to trial with his individual military counsel and, despite stated difficulties between the two, allowed that counsel to represent him throughout the three-day proceeding, only to dissolve the relationship at the end of trial for asserted inadequacies of representation. Sometime after trial, a substitute defense counsel was assigned to assist Appellant in presenting matters to the convening authority. Appellant displayed distrust of that officer at the outset by refusing to reveal specific clemency matters that he had in mind, but counsel nevertheless prepared a request for clemency, which included material from Appellant and legal error asserted by counsel. That legal error later provided a basis for remand of the record by this Court.

Upon the record s remand, Appellant refused to talk at all to substitute counsel or respond to his letters. When another substitute counsel was detailed, Appellant refused to respond to that counsel also, and he has taken the same unresponsive stance with the current appellate counsel, thereby precluding the establishment of an attorney-client relationship. The first appellate defense counsel also encountered problems with Appellant. He was able to establish an attorney-client relationship of sorts and filed a number of motions for delay at Appellant s request to provide him time to retain civilian representation. However, when the Court denied further delay, Appellant communicated to counsel his dissatisfaction

with the adequacy of representation, and counsel moved to withdraw from the case. See *U.S. v. Jennings*, 42 M.J. 764 (C.G.Ct.Crim.App. 1995)(Opinion and Order of the Court in response to Motions for Withdrawal of Appellate Defense Counsel, Assignment of Substitute Counsel, and Filing of Materials under *U.S. v. Grostefon*, supra).

Notwithstanding this problem with their relationship, counsel successfully asserted the errors that resulted in remand of the record, after this Court ordered appellate counsel to continue his representation until such time as Appellant notified the Court that he wished to sever the attorney-client relationship. Appellant was informed of the need for such notification in order for the Court to allow assigned counsel to withdraw and he also was informed that approval of counsel s withdrawal could leave Appellant without representation, since a request for another detailed counsel could very well be denied. *U.S. v. Jennings,* supra, at 42 M.J. 767. No communication from Appellant asking for removal of the first appellate counsel was ever received, nor has anything of that nature been submitted by Appellant with respect to the current counsel, who was detailed to represent Appellant when the record was returned to the Court after the first counsel had transferred to a new permanent duty assignment out of the area. As previously indicated, despite current counsel s unsuccessful efforts to establish communication with Appellant, he has briefed and orally argued assignments of error in Appellant s behalf and has incorporated by reference all previously asserted errors, including those submitted under the rubric of *U.S. v. Grostefon*, supra.

With these facts in mind, we have had to determine whether appellate counsel may represent Appellant, under these circumstances, and whether this Court can proceed with its review under Article 66, UCMJ. In resolving these issues, the earlier competency determination has been taken into consideration. Appellate Exhibit XIII reveals that Appellant s competency was established prior to trial through an examination pursuant to R.C.M. 706, which found him to have sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in his defense. Given the finding that Appellant has the requisite mental capacity to understand the proceedings and cooperate in his own defense, the words from *U.S. v. Bell*, 11 USCMA 306, 29 CMR 122 (1960), take on particular significance. In that case, the accused s conduct with respect to the counsel detailed to represent him before the Army Court s predecessor board of review caused his two qualified defense counsel to request relief from that assignment to avoid compromising their professional standings as lawyers. In reaching its decision with respect to this matter, the Court of Military Appeals said: "an accused who is sane can always forfeit his right to representation before the board, and actions showing an arbitrary and calculated refusal to accept appointed counsel may constitute an abandonment of that right." *Id*. at 29 CMR 125.

Appellant s actions in refusing to communicate with assigned counsel could be viewed as just such an abandonment of the right to counsel. Instead, we have chosen to allow appellate counsel to continue to act pursuant to their assignment absent an explicit statement from Appellant that he does not desire such action on his behalf. Having received no communication from Appellant to the contrary, we have allowed counsel to file assignments of error and orally argue in Appellant s behalf rather than leave him without an assigned attorney who has the duty to protect his interests. In this manner, although Appellant has not actively participated in his defense, we have completed our statutory review of the record with the assistance of a qualified counsel who has been required to advocate issues in Appellant s behalf.

In *U.S. v. Miller*, supra, the Court of Appeals for the Armed Forces found that substitute counsel, who was detailed after trial and failed to contact the accused, "did not enter formally into an attorney-client relationship and, thus, in a legal and ethical sense, did not become appellant s counsel." *Id* at 151. Nevertheless, counsel acted on the accused s behalf, accepting service of the staff judge advocate s recommendation and responding to that recommendation by indicating that he had no comments or corrections to make. The Court of Appeals for the Armed Forces found that it was error for counsel not to formally enter into an attorney-client relationship before performing as counsel for the accused, but recognized "that appellant s interests at that stage were addressed by a functioning lawyer who had the legal duty to protect those interests." For that reason, the Court determined that the error could be tested for prejudice. We find no error here because it is Appellant, not counsel, who has thwarted the establishment of an attorney-client relationship. If, however, it were somehow found to be error for detailed counsel to assign and argue errors on Appellant s behalf before this Court, we believe *U.S. v. Miller*, supra, allows us to test for prejudice. Applying that test to these circumstances, we find that Appellant s interests have been fully protected by counsel assigned to represent him before this Court, even though a formal attorney-client relationship has not been established, and that he has not been prejudiced by that representation.

## Conclusion

After review of the record pursuant to Article 66, UCMJ, we have determined that the findings and sentence are correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings and sentence approved below are affirmed.

Judges KANTOR and WESTON concur.

For the Court

/S/
*Brian Johnson*
Clerk of the Court