*This order is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** <br> *Appellee* <br><br> v. <br> **Cody A. HARPER** <br> Private (E-1) <br> **United States Marine Corps** <br> *Appellant* | **NMCCA No. 201900128** <br><br> **Special Panel 3** <br><br> **PUBLISHED ORDER** <br><br> *To Represent Appellant* |

## PUBLISHED ORDER OF THE COURT

### I. FINDINGS OF FACT

Upon consideration of the record of trial and filings by the parties, this Court finds as follows:

1. On 30 January 2019, before a military judge sitting as a special court-martial, Appellant pleaded and was found guilty to a single specification of using cocaine, in violation of Article 112a, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 912a (2012). Pursuant to a pretrial agreement, all other referred charges and specifications were withdrawn and dismissed without prejudice, to ripen into prejudice once appellate review is complete. Appellant was sentenced to 40 days' confinement and a bad-conduct discharge. The sentence was approved as adjudged on 30 April 2019, at which time, in accordance with the pretrial agreement, the bad-conduct discharge was suspended for six months and was thereafter remitted.

2. After the adjournment of his court-martial, while his case was still pending appellate review, Appellant was administratively separated from the military. He is therefore no longer attached to a military unit or subject to military orders.

3. The parties do not contest that Appellant's case is correctly before this Court, the Navy-Marine Corps Court of Criminal Appeals [NMCCA] pursuant to Article 66, UCMJ, 10 U.S.C. § 866 (2016), which requires automatic appellate review of courts-martial with an approved sentence of, among other things, a bad-conduct discharge. Thus, based on his approved sentence, Appellant, by law, has a

mandatory appeal to this Court unless he affirmatively waives or withdraws his case from such appellate review.[1]

4. As part of the Appellate Rights statement provided to Appellant in writing and discussed with him by the military judge at his court-martial, Appellant was advised of the automatic appellate review by this Court of cases involving the type of sentence he received.[2] He was advised of his right to "waive appellate review" or to "withdraw [his] case from appellate review at a later time."[3] He was further advised, "If your case is reviewed by NMCCA, military counsel *will be appointed to represent you* at no cost to you . . . ."[4]

5. Appellant indicated to the military judge at his court-martial that he had read and understood his rights and had discussed them with his trial defense counsel, and both he and defense counsel signed the Appellate Rights statement advising him of these rights.[5]

6. Appellant has taken no action to affirmatively waive or withdraw his case from automatic appellate review by this Court, or to affirmatively waive representation by military counsel.

7. Appellate defense counsel was properly detailed as military counsel to represent Appellant before this Court. By statute, such appellate defense counsel "*shall* represent the accused before th[is] Court of Criminal Appeals . . . when requested by the accused; [or] when the United States is represented by counsel."[6] At the time of detailing, the only applicable clause was "when requested by the accused," and we determine that the above-described Appellate Rights advice to Appellant that he would be represented by military counsel in the event of an automatic appeal, coupled with the absence of any affirmative waiver of such appeal or such representation, is tantamount to Appellant's uninterrupted and unaltered request for such

---

[1] Arts. 61, 66, UCMJ, 10 U.S.C. §§ 861, 866 (2016); Rule for Courts-Martial [R.C.M.] 1110.

[2] Appellate Exhibit [App. Ex.] IV; Record at 85-86.

[3] App. Ex. IV.

[4] App. Ex. IV (emphasis added).

[5] *Id*. at 3-4.

[6] Art. 70(c)(1)-(2), UCMJ, 10 U.S.C. § 870(c)(2) (2016) (emphasis added). *See also* R.C.M. 1202; Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F CH 1 § 0148 (Jan. 1, 2019).

counsel. Additionally, the United States is now represented by counsel in this case, such that the latter clause also applies.

8.  Appellate defense counsel, after being properly detailed to represent Appellant, submitted a notice of appearance before this Court on 13 June 2019.

9.  On 5 August 2019, appellate defense counsel submitted a motion for first enlargement of time for 10 days on behalf of Appellant.[7] Appellate defense counsel stated in her filing that she had reviewed the entire record of trial (174 pages total, including the 91-page transcript), but further stated she had been unable to locate or communicate with Appellant and anticipated this enlargement would allow her to do so. The request was granted by the Court the same day.

10. On 13 August 2019, appellate defense counsel filed a novel pleading entitled, "No Authority to Represent Appellant," citing her failure to locate or communicate with Appellant to establish an attorney-client relationship. Appellate defense counsel informed the Court she did not intend to file any substantive pleadings on behalf of Appellant; however, she did not file a motion to withdraw. Subsequent to that filing, appellate defense counsel has filed requests for enlargements of time to respond to issues specified for briefing by this Court, a substantive brief on the specified issues, a reply brief, and declarations.

11. Since June 2019, appellate defense counsel has exercised due diligence in trying to locate and communicate with Appellant by sending letters to his last-known address, calling telephone numbers associated with Appellant, and trying to contact him by other similar means. The Government has provided appellate defense counsel all the contact information it has for reaching Appellant, who, due to his administrative discharge, is no longer subject to military orders or under any obligation to maintain updated contact information.

---

[7] For military counsel, the entry in the electronic database as the counsel of record before this Court is considered the notice of appearance; any pleading with counsel's signature is also considered a notice of appearance. N-M Ct. Crim. App. R. 12.

## II. DISCUSSION

Based on the approved sentence, Appellant's case is by statute subject to mandatory appellate review by this Court, which is empowered to "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."[8] As Appellant has not affirmatively waived or withdrawn his case from such appeal, we continue to have jurisdiction to conduct the required review of this case.

As part of the appellate review process, Appellant is afforded representation by military appellate counsel. To that end, appellate defense counsel has been properly detailed to represent Appellant before this Court and by statute "shall" represent him where, as here, Appellant stated his understanding that he would be assigned such counsel in the event of such an automatic appeal; was informed of his right to affirmatively waive such appeal and has not done so; and the United States is represented by counsel. Given these circumstances, particularly the lack of any affirmative action by Appellant either to waive his right to representation or to withdraw his case from appellate review, we conclude that appellate defense counsel not only has the authority, but is statutorily *required* to represent Appellant, to the best of her ability, notwithstanding her inability to locate or communicate with him. Such representation is an inherent aspect of the appellate review process Congress has mandated in Appellant's case, which contemplates that Appellant's best opportunity for a thorough, searching review is to have legal counsel championing his case.

While we understand appellate defense counsel's hesitancy to represent Appellant without communicating with him, we agree with our two sister service courts who addressed this issue in *United States v. Jennings*[9] and *United States v. Sink*[10] and concluded that such communication, while certainly preferable, is not legally required. We find support for such a conclusion from our own decision in *United States v. Thomas*,[11] as well as from our superior court in *United States v. Miller*,[12] *United States v. Moss*,[13] and *United States v. Roach*.[14]

---

[8] Art. 66(c), UCMJ.

[9] 49 M.J. 549 (C.G. Ct. Crim. App. 1998).

[10] 27 M.J. 920 (A.C.M.R 1989).

[11] 33 M.J. 768 (N-M. Ct. Crim. App. 1991).

[12] 63 M.J. 452 (C.A.A.F. 2006).

In *United States v. Roach*, our superior court provided a helpful overview of the history of appellate representation by military counsel, which guides our analysis of this issue:

> Although the military justice system incorporates civilian criminal law practices in important respects, Congress in the UCMJ has preserved many of the historic aspects of military law. Appellate review in the Courts of Criminal Appeals, for example, embodies the traditional affirmative responsibility of military reviewing authorities to conduct mandatory, de novo review of court-martial proceedings.

> In the Article III courts, the responsibility in a criminal case for initiating a timely appeal, paying costs and fees, obtaining a transcript, and retaining counsel rests with the party seeking review. Provision of counsel on appeal at government expense and waiver of costs and fees occur only in the case of an indigent party. The courts of appeals on direct review focus on issues of law, with the burden generally on the appellant to demonstrate prejudicial error.

> Proceedings in the Courts of Criminal Appeals differ from civilian appeals in three significant respects. First, review is mandatory. The Judge Advocate General must submit each case of the type at issue in the present appeal [i.e., meeting a certain sentence threshold] to the court unless the accused affirmatively waives the appeal.

> Second, the Judge Advocate General must provide government-furnished appellate counsel to the accused, regardless of indigence, on request of the accused, or when the government is represented on appeal by counsel. The report accompanying enactment of Article 70, UCMJ, observed that such representation would assure that the accused's case will be thoroughly considered.

> Third, the scope of review by the Courts of Criminal Appeals differs in significant respect from direct review in the civilian federal appellate courts. In addition to reviewing the case for legal error in a manner similar to other appellate courts, Congress has provided the Courts of Criminal Appeals

---

[13] 73 M.J. 64 (C.A.A.F. 2014).

[14] 66 M.J. 410 (C.A.A.F 2008).

with "plenary, *de novo* power of review" and the ability to "'determine[ ], on the basis of the [entire] record' which findings and sentence should be approved." In that regard, the court conducts a de novo review under Article 66(c) of the facts as part of its responsibility to make an affirmative determination as to whether the evidence provides proof of the appellant's guilt of each offense beyond a reasonable doubt. The court also conducts a de novo review of the sentence under Article 66(c) as part of its responsibility to make an affirmative determination as to sentence appropriateness. The reports accompanying the enactment of the UCMJ identified the unique powers established under Article 66 as responding to significant deficiencies in the operation of the military justice system during World War II, particularly with respect to sentence disparities.[15]

Relying on the structure of the military appellate system and its own prior case precedents, our superior court concluded that the Courts of Criminal Appeals [CCAs] "have broad powers to issue orders to counsel to ensure the timely progress of cases reviewed under Article 66."[16] It further found that "[i]rrespective of the reason for not filing a brief . . . when an appellant has requested representation that does not appear to be forthcoming, the court must ensure that military counsel are performing their primary obligation to comply with court orders and protect the interests of [the] client."[17]

As our sister service courts have held, this obligation to protect the interests of the client applies even when an appellant has not formed an attorney-client relationship with his appellate counsel. In *United States v. Jennings*, the Coast Guard Court of Criminal Appeals declined to view an appellant's refusal to communicate with his appellate defense counsel as an effective waiver of counsel, and instead allowed the assigned counsel to represent and advocate for the appellant absent "an explicit statement from Appellant that he does not desire such action on his behalf."[18] As the court explained, "although Appellant has not actively participated in his defense, we have

---

[15] *Id.* at 412-13 (alterations in original) (citations omitted).

[16] *Id.* at 418.

[17] *Id.*

[18] 49 M.J. at 553.

completed our statutory review of the record with the assistance of a qualified counsel who has been required to advocate issues in Appellant's behalf."[19]

The Army Court of Military Review reached a similar conclusion in *United States v. Sink*,[20] where the appellant was found guilty after a contested trial, went absent before sentencing without ever affirmatively requesting appellate counsel or even being informed of his Appellate Rights, and remained absent for the appeal. There, as here, the assigned appellate defense counsel asserted he was precluded from representing the appellant before the CCA because he could not form an attorney-client relationship with the absent appellant and the appellate defense counsel requested the appeal be held in abeyance.[21] The court disagreed, relying on the mandates contained in Article 70, UCMJ, and Rule for Courts-Martial 1202, determined that even when not requested, the appellate defense counsel shall represent the appellant before the court.[22] As the court found, "[t]his duty of representation can be met in most cases without appellant's knowledge or active participation."[23] Thus, although the case was contested at trial, the court concluded there was no need to hold the appeal in abeyance until the appellant was found and that appellate defense counsel could proceed with representing the appellant's best interests and advocating on his behalf even where no attorney-client relationship had been formed.[24]

These precedents are consistent with our own determination in *United States v. Thomas*[25] that "appointment of appellate counsel is statutorily mandated unless the appellant waives that right in writing after having been

---

[19] *Id.*

[20] 27 M.J. 920 (A.C.M.R. 1989).

[21] *Id.* at 921.

[22] *Id.* at 921 n.1 (stating "[w]e read these rules to require appointment of appellate counsel, regardless of failure of the appellant to request counsel"); *but see United States v. Matthews,* 19 M.J. 707 (A.F.C.M.R. 1984), *pet. denied,* 20 M.J. 146 (C.M.A. 1985) (holding an appellant, who was tried in absentia and not provided Appellate Rights to request counsel, by being in absentia, waived the right to counsel on appeal).

[23] *Sink*, 27 M.J. at 921 (citing *United States v. Palenius,* 2 M.J. 86, 92 (C.M.A. 1977)); *see also United State v. Tilley,* 26 M.J. 846, 847-848 n.1 (A.C.M.R. 1988) (stating that because appellate review is limited to a review of a record of trial, communication with the client is "of less consequence than at trial").

[24] *Sink*, 27 M.J. at 921.

[25] 33 M.J. 768 (N-M. Ct. Crim. App. 1991).

fully advised of the ramifications of such waiver by qualified counsel."[26] As there was no waiver of the right to appellate counsel here, we conclude that appellate defense counsel's statutory obligation to represent Appellant and advocate on his behalf remains, despite the lack of communication between attorney and client.

We also reach this conclusion in reliance on additional precedent from our superior court. First, in *United States v. Miller*,[27] the appellate defense counsel sent a letter soliciting input from the appellant and requested a response within 20 days.[28] The appellate defense counsel did not provide the appellant 20 days and instead submitted an appellate brief with no assignment of error. The Appellant never responded to the letter from his counsel. While the court found that counsel should have waited the full 20 days before submitting any brief on behalf of the appellant, the court neither addressed nor found error due to any asserted lack of an attorney-client relationship or the lack of effective communication between attorney and client. The court simply reviewed for prejudice and found none.

More importantly, in *United States v. Moss*,[29] our superior court found no issue with appellate defense counsel representing an appellant before the CCA, even though there had been no communication between attorney and client. In *Moss*, the appellant was convicted and sentenced in absentia after a contested trial but had elected representation by appellate defense counsel prior to going absent. After the Army Court of Criminal Appeals [ACCA] affirmed, it sent notice to Moss of his right to appeal to the Court of Appeals for the Armed Forces [CAAF] to his last known address, as Moss was in a fugitive status during the pendency of the appeal. The notice was ultimately returned as undeliverable.[30] After arguing the case before the CCA, Moss's detailed appellate defense counsel appealed to CAAF but had no specific authorization from Moss to do so, and it appears, as in this case, that the appellate defense counsel had never spoken to Moss in connection with the appeal to the CCA or the appeal to CAAF.

CAAF determined that the request for representation by Moss contained in the Appellate Rights statement gave rise to a "continuing duty" of appellate defense counsel to represent him before the CCA even though Moss

---

[26] *Id.* at 773.

[27] 63 M.J. 452 (C.A.A.F. 2006).

[28] *Id.* at 455.

[29] 73 M.J. 64 (C.A.A.F. 2014).

[30] *Id.* at 66, 70.

was absent, tried in absentia, and had not communicated with the appellate defense counsel for purpose of the appeal to the CCA.[31] While distinguishing the counsel's ability to affirmatively petition CAAF based on a difference in the statutory language, CAAF specifically found that "appellate defense counsel's duty to represent Moss was predicated on her previously provided limited authority [contained in the Appellate Rights statement] to appeal only to the ACCA."[32] Even with respect to petitioning CAAF, the court found that

> [i]f the accused is not available and cannot be located within the time provided to file a petition for review before this court, "the attorney can and should proceed in accordance with the authority previously given by the accused and file such proceedings as may be necessary to protect the interests of his client."[33]

Since Moss indicated a desire to be represented by appellate defense counsel in the Appellate Rights statement if the sentence fell within the jurisdiction for an automatic appeal, the court found that an attorney-client relationship existed (limited in *scope* to representation before the CCA) despite the inability of counsel to communicate with the fugitive appellant.[34]

We conclude likewise in this case, that notwithstanding her inability to locate Appellant, appellate defense counsel is not only able to adequately represent Appellant's interests before this Court, but that she is legally required to do so under the appellate review system enacted by Congress. Without question, the best situation is for Appellant to have communications

---

[31] *Id.* at 68.

[32] *Id.* at 69 (quoting *United States v. Larneard*, 3 M.J. 76, 82 (C.M.A. 1977)).

[33] *Id.*

[34] The decision echoed the court's earlier decision in *United States v. Larneard*, wherein the court stated:

> While it is the appellant's decision whether to take an appeal to this Court, once he instructs his counsel to pursue the appeal, that attorney can and should do all that he may ethically do in furtherance of his client's cause. Implicit in what we now decide is that the attorney may sign the petition and any ancillary papers as attorney for the accused. In that regard, the attorney is acting as the agent for the appellant pursuant to his client's instruction and authorization to pursue the appeal. Execution of the pleadings only manifests the client's decision to go forward with his case.

3 M.J. 76, 82 (C.M.A. 1977).

with his detailed appellate defense counsel.[35] However, that is not always possible when appellants become unavailable—whether inadvertently or intentionally—during the pendency of their appeal. Here, Appellant was specifically advised and understood that unless he waived his appeal, his case would receive automatic appellate review, during which he would be represented by military counsel. Hence, absent evidence of any affirmative election on his part to waive the appeal, the case shall continue with mandatory appellate review, and appellate defense counsel must act in the best interest of Appellant in effectuating his understanding both that appellate review would take place and that he would be represented by military counsel during such an appeal.

Accordingly, we join in the view expressed by our sister service courts that an appellate defense counsel's obligation to protect the interests of his or her client applies even when the appellant cannot be located for effective communication with appellate counsel. It is nonsensical and against all tenets of fundamental fairness within the military justice system for an appellate defense counsel, during a mandatory appeal for which Appellant has an acknowledged right to military counsel, to effectively forfeit that right to counsel without Appellant's knowledge or consent. Like the court in *Sink*, we decline to hold the appeal in abeyance under such circumstances, when Article 70, UCMJ, clearly requires that, even when not requested, the detailed appellate defense counsel *shall* represent the appellant before the CCA where, as here, the United States is represented by counsel. We further agree that, although certainly not preferred, the duty of representation can be met without Appellant's active participation, and we conclude that appellate defense counsel can proceed with representing Appellant's best interests and advocating on his behalf even when Appellant has not been located for effective communication with his appellate counsel. While this Court has the duty to conduct its own review of the case under Article 66, UCMJ, we will not permit an appellate defense counsel, who has properly been detailed to represent an appellant entitled to a mandatory appeal (and who has made an appearance before this Court), to simply sit on the sidelines.

This view is consistent with the ethical rules outlined in the Navy Judge Advocate General's [JAG] Corps Rules of Professional Conduct.[36] As Rule

---

[35] *See Miller*, 63 M.J. at 456.

[36] Professional Conduct of Attorneys Practicing Under the Cognizance and Supervision of the Judge Advocate General, Judge Advocate General Instruction 5803.1E, Principle II (Jan. 20, 2015) [JAG Rules of Professional Conduct].

1.2b explains, "the subject-matter scope of a covered attorney's representation will be consistent with the terms of the assignment to perform specific representational or advisory duties."[37] Here, absent indication of any further limitation, that scope embraces the same military appellate representation Appellant was advised he would receive in the Appellate Rights statement and indicated he understood before the military judge. Consistent with the scope of such appellate representation, the ethical rules and commentary thereto further provide:

> [A] covered attorney should pursue a matter on behalf of a client . . . and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.[38]
>
> . . . .
>
> Unless the relationship is terminated . . . and to the extent permitted by law and regulations, a covered attorney should carry through *to conclusion* all matters undertaken for a client. If a covered attorney's representation is limited to a specific matter, the relationship terminates when the matter has been either concluded or resolved.[39]

Together, these rules provide a general mandate that appellate defense counsel must pursue his or her client's best interests to the greatest extent possible until the specific matter—in this case, Appellant's mandatory appeal before this Court—has been concluded or otherwise resolved.[40] Our research into guidance from state bar association and judicial ethics opinions does not

---

[37] JAG Rules of Professional Conduct, r. 1.2b.

[38] JAG Rules of Professional Conduct, r. 1.3 cmt. 1.

[39] JAG Rules of Professional Conduct, r. 1.3 cmt. 3 (emphasis added).

[40] We note the agreement of legal commentators with this principle, that absent indication an appellant wishes to withdraw an appeal, the appellate counsel detailed to the case is ethically required to go forward with the representation. *See, e.g.,* Major Jay L. Thorman, *Conquering Competency and Other Professional Responsibility Pointers for Appellate Practitioners*, 2011 Army Lawyer *4, *8-10 (November, 2011) (discussing that for the common occurrence of missing clients during military appeals, the rules of professional conduct generally require continued representation by appellate counsel) (citations omitted); *Restatement (Third) of the Law Governing Lawyers* § 14, cmt. g (Am. Law Inst. 2000) ("A lawyer may be required to represent a client when appointed by a court or other tribunal with power to do so" and when a "court appoints a lawyer to represent a person, that person's consent may ordinarily be assumed absent the person's rejection of the lawyer's services.").

indicate to the contrary.[41] Thus, particularly in light of the military case precedents outlined above, we see no conflict between the rules of professional conduct and appellate defense counsel's duty to represent Appellant in his mandatory appeal before this Court.[42]

## III. CONCLUSION

Thus, consistent with the military appellate system enacted by Congress, the opinions of our superior and sister courts, and other pertinent legal and ethical guidance, we hold that Appellant is entitled to continued appellate representation by appellate defense counsel before this Court, notwithstanding appellate defense counsel's inability—after exercising due diligence—to locate or communicate with him. As our superior court explained in *Roach*, Appellant is simply in a better position with a sage advocate representing his

---

[41] *See e.g., Burke v. Lewis*, 122 P. 3d 533, 541-42 (Utah 2005) (holding if ordered by competent authority, counsel can represent client); Alaska Bar Ass'n Ethics Comm., Op. 2011-4 (2011) (concluding that even if the client cannot be contacted, an attorney who has been directed by the client to file a criminal appeal must file the notice of appeal and points on appeal and make reasonable inquiry as to the client's whereabouts and reasonable efforts to contact the client in order to inform the client as to the status of the appeal); Or. State Bar Ass'n Formal Op. No. 2005-33 (Aug. 2005) (in a civil matter, lawyer was not permitted to withdraw from an appeal without first requesting leave to do so even when defendant client had fled the country); R.I. Ethics Advisory Panel Gen. Info. Op. p No. 6 (Jun. 30, 1993) (lawyer must exercise diligent efforts both to locate the missing client and to protect the missing client's interests); Colo. Bar Formal Ethics Op. 128, 2015 CO Legal Ethics Ops. LEXIS 4 (Oct. 17, 2015) (stating while representation and communication are in tension when there is no contact with client, "this tension should be resolved in favor of protecting the absent client's interests"; "[a]n attorney may not decline to advocate on behalf of the client simply because the client does not attend court hearings or provide direction to the attorney"; "an attorney must still exercise professional judgment as to how to advocate for the client's best interests"; "[i]n determining the extent of actions a lawyer may take on behalf of an absent client, the primary consideration should be avoiding prejudice to the client to the extent feasible"; and "[i]f a lawyer reasonably believes the client has authorized the lawyer to take some action and is relying on the lawyer to do so, the lawyer may act on behalf of the client."); *see also* N.C. State Bar 2003 Formal Ethics Op. 16 (adopted July 16 2004) (discussing the representation of an absent respondent in a dependency proceeding).

[42] Even if there were, we note that the underlying ethical principles on which the professional conduct rules are based expound the view that the law, as we have described above, generally prevails if there is a conflict between the law and the ethical rules. *See* JAG Rules of Professional Conduct, Principle II ("Ethical rules should be consistent with law. If law and ethics conflict, the law prevails unless an ethical rule is constitutionally based.").

interests before this Court, as opposed to the Court performing its Article 66 review without the benefit of such advocacy.

Therefore, it is on this 26th day of June, 2020,

**ORDERED:**

That appellate defense counsel shall continue with her representation of Appellant and file a Brief on his behalf no later than the 20 July 2020.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court