UNITED STATES, Appellee,

v.

Sergeant Wayne M. PARKER, United
States Army, Appellant.

ARMY 9600945.

U.S. Army Court of Criminal Appeals.

16 May 2000.

For Appellant: Colonel John T. Phelps II, JA; Colonel Adele H. Odegard, JA; Major Holly S.G. Coffey, JA; Captain Scott A. de la Vega, JA (on brief); Captain Thomas Jay Barrett, JA; Major Sheila E. McDonald.

For Appellee: Colonel Russell S. Estey, JA; Captain Mary E. Braisted, JA; Captain Katherine M. Kane, JA (on brief).

Before CAIRNS, Senior Judge, MERCK, Senior Judge, and TRANT, Appellate Military Judge.

## OPINION OF THE COURT AND ORDER ADDRESSING INTERLOCUTORY APPELLATE MOTIONS

CAIRNS, Senior Judge:

A general court-martial convicted the appellant of rape (two specifications), sodomy (two specifications), assault, and adultery (three specifications), in violation of Articles 120, 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, 928, and 934 [hereinafter UCMJ]. On 1 May 1996, the members sentenced the appellant to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to Private E1. On 14 November 1996, the convening authority disapproved the finding of guilty of one specification of sodomy, dismissed that specification, reduced the period of confinement to nine years and six months, but otherwise approved the adjudged sentence.[1]

---

1. On 11 June 1996, the convening authority waived the forfeitures of pay and allowances for a period of six months.

After the Clerk of Court received the record of trial on 14 March 1997, we granted the appellant fifteen extensions of time to file pleadings. On 5 October 1998, appellate defense counsel filed thirteen assignments of error and a brief in support thereof. A series of unusual circumstances, addressed below, delayed the filing of appellate pleadings and has further delayed our consideration of the Article 66, UCMJ, 10 U.S.C. § 866, appeal.

We write to explain this, our seventh Order, pertaining to the appellant's appellate representation. The issue we must decide today is whether to grant a motion filed by the Chief, Defense Appellate Division, to withdraw all appellate defense counsel assigned to the division as appellate counsel for the appellant; and, if that motion is granted, whether the appellant is entitled to another Article 70, UCMJ, 10 U.S.C. § 870, appellate defense counsel.

## APPELLATE HISTORY [2]

The initial appellate processing in this case appeared unremarkable through the appellant's sixth motion for extension of time to file pleadings, which motion we granted on 23 December 1997.[3] Then, on 22 January 1998, the Chief, Defense Appellate Division, moved for a seventh extension of time, explaining that the appellant believed a conflict of interest had developed between appellant and his assigned appellate counsel. According to the motion, "[b]ased on appellant's assertions, the previous assigned counsel can no longer represent appellant and a new counsel will be appointed."

Since that time, the appellant has been represented in succession by three additional appellate defense counsel, each assigned by the Chief, Defense Appellate Division, at the insistence of the appellant or in response to the appellant's complaints about his counsel.

A month after the second appellate defense counsel was assigned, the appellant filed a pro se "Motion to Compel Disclosure," in which he complained that he did not have "an Appellate Defense Counsel willing to represent justice or Appellant to obtain a full and fair Appellate Review of the prosecutor's use of known perjury." In this motion, which we treated as a petition for extraordinary relief, the appellant asked us to order the government to turn over certain documents, asserting that his second appellate defense counsel's failure to move for discovery of these documents flowed from a conflict of interest that appellant suggested was racially motivated. We denied the appellant relief.

On 2 March 1998, shortly after we denied appellant's pro se request for relief, a third appellate defense counsel filed a motion for extension to file substantive pleadings, explaining that he needed time because he had recently been assigned to the appellant's case after the appellant "requested replacement of yet another of his appellate defense counsel."[4] In the motion, counsel advised that the Chief, Defense Appellate Division, had approved the appellant's request on the condition that his assignment constituted the final change in counsel.

Less than a month later, the appellant sent the Clerk of Court a letter stating, "[t]his Court is not to accept any filings on my behalf by any assigned Appellate defense counsel without my expressed consent by means of original signature." Within five days, the appellant rescinded the letter.

---

2. A detailed chronology of the history of this case is attached as an Appendix to this opinion.

3. The appellant had filed a pro se Writ of Error Coram Nobis before his record of trial had been received by the Clerk of Court, and the writ was forwarded by the Clerk to the designated appellate defense counsel. Although filing such a pro se writ prior to appellate review is unusual, it is not a unique occurrence.

4. In subsequent pleadings, the appellant disputed that he made such request. However, we note that, in addition to his obvious dissatisfaction with his second counsel expressed in his "Motion to Compel," when the appellant appealed our adverse ruling, he requested an Air Force counsel be appointed to represent him because he feared the Army would provide him "another [c]ounsel that will be unwilling to zealously represent [a]ppellant." The appellant made this request in his writ appeal to the Court of Appeals for the Armed Forces, while his second appellate defense counsel was still on the case.

Almost two months then elapsed before the appellant filed, pro se, a twenty-three page writ of prohibition in which he requested, among other things, that this court prefer charges against his first three appellate defense counsel for noncompliance with procedural rules, false official statements, and conduct unbecoming an officer, in violation of Articles 98, 107, and 133, UCMJ, 10 U.S.C. §§ 898, 907, and 933.[5] Gleaning what we can from this emotionally charged pro se writ,[6] it appears that the appellant's allegations stemmed from his counsel's refusal to use the legal process to demand production of a videotape deposition, audio tapes from his Article 32(b), UCMJ, investigation, and certain other documents, all of which appellant asserted were either missing from his record of trial or in the possession of the government. Apparently, appellant considered the exhibits and documents crucial to his appeal and his effort to demonstrate his innocence, while appellant's assigned appellate defense counsel disagreed with the appellant's assessment.

After the appellant attacked his first three appellate defense counsel in the pro se writ of prohibition, the Chief, Defense Appellate Division, requested three, one-month enlargements of time in order to resolve the issue of appellate representation. We granted these motions. In a fourth motion for extension, the Chief, Defense Appellate Division, explained that he had agreed to provide the appellant a new appellate defense counsel, his fourth such Defense Appellate Division counsel, who needed additional time to review the case and prepare pleadings. On 5 October 1998, the fourth appellate defense counsel, along with his branch chief and the Chief and Deputy Chief, Defense Appellate Division, filed thirteen assignments of error and a thirty-two page brief. They also filed an Appendix, containing eleven Grostefon[7] allegations summarized by counsel and twelve additional, handwritten allegations personally asserted by the appellant.

Two days after the assignment of errors were filed, we granted the appellate defense counsel's motion for an extension of time to file supplemental assignments of error and additional Grostefon matters. The motion was predicated upon an averment that there was a possibility of finding the "missing" videotape deposition. On 3 December 1998, we granted a defense motion to withdraw previously filed Grostefon matters. On 7 December 1998, we granted a motion for an extension of time to file such matters, specifying that it was the final extension.

On 30 December 1998, the Chief, Defense Appellate Division, filed an Ex Parte Motion for Defense Appellate Division to Withdraw as Counsel for Appellant; an Alternate Motion to Request Guidance Regarding Representation of Appellant; a Motion to Allow Appellant 30 Days to Respond; and a brief in support of the motion to withdraw.[8] In the brief supporting the motion, the Chief, Defense Appellate Division, asserted that, over the course of the Defense Appellate Division's representation of this client, the appellant disagreed with the professional assessment of his four lead appellate defense counsel regarding which issues should be raised in his case; demanded that certain issues be raised which counsel believed were either not meritorious or actually harmful to the appellant; accused appellate defense counsel of professional and criminal derelictions; and requested the State and Federal Bar affiliations of previously and currently assigned counsel, so he could demand investigations into "what is really going on at the Defense Appellate Division." The quoted language comes from a letter from the appellant to the Chief, Defense Appellate Division, dated 21 December 1998, "Subj: WRITTEN

---

5. We denied this petition for a writ of prohibition on 19 June 1998, and the Court of Appeals for the Armed Forces subsequently denied the appellant's writ appeal.

6. We have taken judicial notice of all the extraordinary writs associated with this case which have been filed by the appellant.

7. See United States v. Grostefon, 12 M.J. 431 (C.M.A.1982).

8. The pleadings were signed by the Chief and Deputy Chief, Defense Appellate Division and the fourth assigned appellate defense counsel. Subsequently, they moved to reclassify the ex parte motions to standard, non-ex parte motions. We granted the motion to reclassify.

NOTIFICATION OF NON–COMPLIANCE PURSUANT TO BINDING CASE LAW AND EXTREME CONFLICT OF INTEREST WITH ASSIGNED COUNSELS," which was attached to the Defense Appellate Division's brief. The letter indicated that copies were furnished to The Judge Advocate General, the Chief Judge, United States Army Court of Criminal Appeals, and the American Bar Association. In this letter, the appellant launched a vitriolic attack against appellate defense counsel, the Chief, Defense Appellate Division, the Clerk of Court, and this court, asserting incompetence of counsel and collusion,[9] threatening civil and criminal prosecutions, and culminating with: "This leads me to the bottomline, you are FIRED! ! !"

On 22 January 1999, as a consequence of the Defense Appellate Division's motion to withdraw, we ordered that a conflict-free counsel be provided the appellant to advise him fully of his rights to appellate representation, the limits on those rights, and the options he had regarding appellate representation, including the implications of pro se representation. We ordered the conflict-free counsel, after full consultation with the appellant, to respond to the pending motions. Finally, we directed until such time that we approved a motion by the appellant to proceed pro se, or until the court mandated pro se representation under the standards of *United States v. Bell,* 11 U.S.C.M.A. 306, 29 C.M.R. 122, 1960 WL 4470 (1960), that all pleadings on behalf of the appellant, aside from *Grostefon* matters, would be filed by the conflict-free counsel or the appellate defense counsel of record.

Within ten days of our Order, the appellant, in a pro se document devoted primarily to further attack on his appellate defense counsel, requested that the court appoint a conflict-free counsel for representation. Since then, the appellant has filed fifteen pro se documents, motions, and letters and his conflict-free counsel has submitted five filings pertaining to this case, including her attestation of compliance with our Order to provide advice to the appellant regarding his representational rights.

In responding to the Defense Appellate Division's motion to withdraw, the conflict-free counsel informed the court that the appellant could not respond without reviewing appellate defense counsel's files, and that he demanded conflict-free counsel for representation. In her last filing, the conflict-free counsel sought the court's guidance after the appellant informed her that their attorney-client relationship was terminated.

We have issued six Orders in an effort to ensure the appellant's rights are protected and to ascertain the precise nature of the appellant's complaints about his appellate defense counsel. This has been necessary so that we can evaluate his entitlement to continued Article 70, UCMJ, representation under prevailing law. As a consequence of the appellant's continued assertions against appellate defense counsel, and the Defense Appellate Division's concern with protecting the integrity and confidentiality of communications between appellate defense counsel and their clients, the parties have been embroiled in litigating several derivative issues including the release to the appellant of files and documents. The appellant asserted that he needed the files in order to respond to Defense Appellate Division's motion to withdraw, to comply with our Order that he detail how his appellate defense counsel were deficient, and to support his demand for substitute Article 70, UCMJ, counsel. After extensive litigation, culminating in the Defense Appellate Division's acquiescence in releasing most of the files and documents, we ordered release of virtually all disputed documents and then ordered the appellant to articulate why he believed he had been denied effective assistance of appellate counsel.

In a response filed in September 1999, the appellant asserted that he could not comply with our Order because the Disciplinary Barracks was engaged in a conspiracy with the Government Appellate Division "and possibly the defense appellate division" to deny him access to this court by seizing his record of

---

9. The appellant alleged collusion between the Defense Appellate Division, the Clerk of Court, the Government Appellate Division, and the United States Army Court of Criminal Appeals—all in an effort to deny him due process of law.

trial, law books, pleadings, and other legal materials. In a pro se writ of mandamus, he further asserted that he had been placed in solitary confinement to prevent him from filing legal actions on his behalf and asked us to order the Disciplinary Barracks not to interfere with his legal correspondence, to stop scheduling law library time during outdoor recreation/weight room call, and to appoint a conflict-free counsel for representation.

On 6 January 2000, we ordered a representative of the Disciplinary Barracks to submit an affidavit regarding the appellant's allegation that his record of trial and other legal documents had been confiscated, thus preventing him from complying with our Order to detail the deficiencies of his appellate defense counsel. The Commandant, United States Disciplinary Barracks, designated his command judge advocate (CJA) to respond.

On 31 January 2000, the CJA stated in an affidavit that the appellant had never been deprived of his record of trial or any other legal material pertaining directly to his case, and that at the time of the affidavit, an inspection revealed that the appellant had in his cell two large boxes filled with legal materials, including his record of trial, briefs to the court, Orders from the court, letters from the Clerk of Court, motions, certificates of filing and service, responses to Orders, and various other legal materials. He swore that the appellant has "complete and unrestricted access" to all these documents, and they have never been confiscated.[10] Finally, the CJA related that as a medium custody inmate, the appellant has access four hours per week to a law library which conforms to the requirements of the American Corrections Association, and if that library is inade-

quate to meet individual needs, additional reference materials may be requested through the CJA's LEXIS account.

On 2 March 2000, the Clerk of Court submitted a memorandum in which he forwarded five recent letters and a facsimile coversheet from the appellant. Among other things, the appellant claimed in this correspondence that the cadre at the Disciplinary Barracks confiscated all of his legal books and other materials *on 13 February 2000,* some five months after he first alleged such confiscation and after the date of the CJA's affidavit. He further alleged that these materials were then in the possession of the CJA; that the conflict-free counsel had advised him that she is not his attorney; that she had only been an impediment anyway "because she has repeatedly refused to submit, inquire or file issues, motions or requests for clarification to the court"; that he does not understand the court's Order requiring him to specify the professional deficiencies committed by each appellate defense counsel against whom he is alleging ineffective assistance of counsel; and that he needs help and representation.

On 18 April 2000, the Chief, Defense Appellate Division, filed another motion to withdraw and a motion to sever the attorney-client relationship because she had received a copy of a civil complaint purportedly filed by the appellant in the United States District Court, District of Columbia. The appellant alleges in the civil complaint, which was attached to the motion, a violation of his civil rights under 42 U.S.C. § 1983, and names as defendants the Secretary of the Army; The Judge Advocate General; the Assistant Judge Advocate General for Civil Law and Litigation;[11] the former and current Chiefs,

10. The CJA further related, however, that:

> On 6 August 1999, 20 books identified as "West's Federal Reporter books w/no front cover" were removed from the appellant as prohibited property. In addition, 12 "legal" documents pertaining to other inmates were removed from the appellant's cell. One of those documents was subsequently returned to the appellant when it was determined that even though the appellant was not listed as a party to the suit that it was a class action lawsuit and the appellant was a class member. That lawsuit does not relate to the appellant's

appeal presently before this court. Additionally, there were some documents initially seized from the appellant that were later identified as property of the appellant. Those documents were returned to the appellant even after he refused receipt of those documents.

11. The complaint names Brigadier General (BG) Michael J. Marchand as the incumbent Assistant Judge Advocate General for Civil Law and Litigation and supervisor of Defense Appellate Division. Actually, BG Marchand is the Chief Judge, U.S. Army Court of Criminal Appeals, and the Commander, United States Army Legal Services

Defense Appellate Division;[12] and all four lead appellate defense counsel who, at one time or another, were assigned to represent the appellant in the appeal of the case at bar. In general, the basis of the complaint is an allegation that defendants acted or failed to act so as to deprive the appellant of legal representation and access to the courts.

## LAW

### A. Entitlement to Appellate Defense Counsel

Article 70, UCMJ, provides that The Judge Advocate General shall detail appellate defense counsel who are qualified in accordance with Article 27(b), UCMJ, 10 U.S.C. § 827(b). The statute requires that such qualified appellate counsel shall represent appellants before the Court of Criminal Appeals and the Court of Appeals for the Armed Forces when requested by individual appellants.[13] Article 70, UCMJ, also establishes the right of an appellant to be represented before these courts by civilian counsel, if provided by the appellant.

### B. Professional Standards for Appellate Defense Counsel

Appellate defense counsel owe a professional, ethical duty to represent their clients competently and diligently, within the bounds of law and ethics. *See* Army Reg. 27–26, Army Rules of Professional Conduct for Lawyers (1 May 1992) [hereinafter AR 27–26], rules 1.1 and 1.3. Within these legal and ethical boundaries, appellate defense counsel are also obligated to abide by the client's decisions concerning the objectives of representation. *See* AR 27–26, rule 1.2. However, as to the means of pursuing those objec-

tives, the lawyer makes all tactical decisions after consulting with the client.[14]

The appellate defense counsel's obligation to pursue diligently the client's objectives must be viewed in light of counsel's countervailing ethical duty to assert only non-frivolous issues on appeal. *See* AR 27–26, rule 3.1. Under rule 3.1, an issue is not frivolous when a basis for asserting it exists, including a good faith argument for an extension, modification, or reversal of existing law. Often the line differentiating between an issue as meritorious or frivolous is blurred. The ethical dilemma of whether to assert a dubious issue is further complicated when a client insists that the issue be raised. However, the Court of Military Appeals provided appellate defense counsel practical guidance for dealing with borderline issues when it established the requirements for presenting client-specified issues in *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

Recognizing that appellate defense counsel have an obligation to raise all arguable issues, but not those which in their professional opinion are frivolous, the *Grostefon* rules require counsel, at a minimum, to invite the court's attention to any issue specified by the appellant. Counsel may restate client-specified issues in order to present them more persuasively to the courts. No matter how frivolous the issue, under the procedures established by *Grostefon*, counsel cannot be criticized or admonished for an ethical breach because they identify for the court's consideration issues that the appellant insists he wants presented. *See Grostefon*, 12 M.J. at 437.

---

Agency. He has no operational supervisory authority over the Defense Appellate Division in either capacity.

12. Colonel John T. Phelps II formerly served as the Chief, Defense Appellate Division, until the summer of 1999, when he was reassigned to a new duty position and station. He was replaced by Colonel Adele H. Odegard, who had previously served as the Deputy Chief, Defense Appellate Division, under Colonel Phelps.

13. Article 70, UCMJ, also requires appellate defense counsel to represent appellants when the government is represented by counsel or when

The Judge Advocate General has sent the case to the Court of Appeals for the Armed Forces.

14. At the trial level of criminal cases, the decisions left solely to clients, after consultation with counsel, are clear: choice of counsel as provided by law, plea, trial forum, whether to enter into a pretrial agreement, and whether the client will testify. *See* AR 27–26, rule 1.2(a). Beyond those decisions, the lawyer exercises considerable discretion and is not required to pursue objectives or employ means solely to satisfy the will of the client. At the appellate level, the rules are less defined, but the same principles apply.

While appellate defense counsel must competently and diligently support their client's appeal and present all *Grostefon* matters, they are entitled to exercise considerable professional discretion in determining the manner by which the client's appeal will be pursued. For example, "[t]he choice whether to merely call the attention of an appellate court to an issue through a *Grostefon* footnote or to affirmatively advocate an issue by briefing it rests with counsel. That choice, however, is subject to scrutiny under the circumstances of each individual case." *United States v. Quigley*, 35 M.J. 345 (C.M.A.1992) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Of course, appellate defense counsel's professional performance is always subject to scrutiny because appellants are entitled to effective assistance of counsel. The same standards for assessing effective assistance of counsel at trial under *Strickland v. Washington* apply to appellate defense counsel in their representation of clients on appeal. *See United States v. Curtis*, 44 M.J. 106 (1996).

Appellate defense counsel have a duty of diligence to use legal procedures for the client's benefit, but they have a concommitant duty not to abuse the legal process. *See* AR 27-26, rule 3.1, comment. Hence, counsel are not required to "press for every advantage" at the behest of clients. *See* AR 27-26, rule 1.3, comment. As the Court of Military Appeals pointed out, "[i]t is enough that the attorney assigned to the appeal is qualified to represent the prisoner, and that he has advised with him and done whatever possible to represent him competently. Counsel is not required to dance to the prisoner's tune." *Bell*, 29 C.M.R. 122, 1960 WL 4470 (1960) (quoting and adopting *State v. Rinaldi*, 58 N.J.Super. 209, 156 A.2d 28, 30 (App.Div.1959)).

### C. Withdrawal of Appellate Defense Counsel and Article 70, UCMJ, Entitlement to Substitute Counsel

An appellate defense counsel *may* seek to withdraw when a client persists in a course of conduct involving the lawyer's services which is criminal, fraudulent, repugnant, or imprudent.[15] An appellate defense counsel *must* seek to withdraw when dismissed by the client, and a client has the right to discharge his counsel with or without cause. *See* AR 27-26, rule 1.16. In any event, when an appellate defense counsel seeks withdrawal after having made an appearance on behalf of a client, the counsel must request release from the court in which the appeal is then pending. *Cf. United States v. Palenius*, 2 M.J. 86, 93 (C.M.A. 1977); *Bell*, 29 C.M.R. at 125. If the court approves counsel's withdrawal, the issue remains whether the client is entitled to substitute appellate defense counsel provided under Article 70, UCMJ.

In the leading case of *United States v. Bell*, the Court of Military Appeals reviewed the Army Board of Review's decision to allow appellate defense counsel to withdraw from their representation of the appellant without providing him with substitute counsel. In that case, two qualified appellate defense counsel were assigned to represent the appellant under Article 70, UCMJ, but problems arose when the appellant insisted that his counsel assert errors that they considered inappropriate. The Board of Review observed that the appellant's "obstreperous" conduct, which was not further described, caused the two qualified appellate defense counsel to ask the Board for relief from their duty to represent appellant so they could avoid compromising their standing as lawyers. The Board approved the withdrawal request and proceeded to decide the Article 66, UCMJ, appeal "without taking some measures to protect the rights of [the appellant] to representation." *Bell*, 29 C.M.R. at 125.

The Court of Military Appeals reversed the Board of Review's decision, not because the Board failed to appoint substitute counsel, but because the Board failed to provide the appellant with adequate notice of their Order permitting withdrawal of counsel

---

15. "A lawyer ordinarily must seek to withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates these Rules of Professional Conduct or other law." *See* AR 27-26, rule 1.16, comment.

and time to respond to the new situation. *See Bell,* 29 C.M.R. at 126. In suggesting several possible courses of action available to the courts under these circumstances, the *Bell* court articulated important limits on an appellant's entitlement to representation under Article 70, UCMJ:

> [B]arring some showing by [appellant] of the unsuitability or incompetency of appointed counsel, he can be required either to accept the representation made available or to wage his appeal alone. There is a limit beyond which military authorities need not go and if an accused becomes unreasonable in his demands, he may forfeit his right to any assistance.

*Bell,* 29 C.M.R. at 125. Inferring that the Board of Review had indeed found that the appellant had acted unreasonably and "was merely trying to bend his lawyers and the [appellate] processes ... to the dictates of his command," the court observed:

> In such a situation, a [court] is faced with a delicate situation, but we have no doubt that if the [court] proceeds properly it may release the lawyers and proceed without requiring the Government to furnish other counsel.... In the order releasing counsel, there should be included a notice that different military counsel will not be made available to [appellant] and he must either represent himself or obtain civilian counsel.

*Bell,* 29 C.M.R. at 126.

### D. Factfinding on Collateral Issues

 Under Article 66(c), UCMJ, the Courts of Criminal Appeals enjoy fact-finding powers in considering the record of trial, assessing credibility, and in affirming only those findings of guilty that should be affirmed as correct in law and fact. This fact-finding power is limited, however, and a Court of Criminal Appeals possesses no such power to decide disputed questions of fact on collateral issues, such as post-trial claims of ineffective assistance of counsel. According-

ly, Courts of Criminal Appeals may not "decide disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *United States v. Ginn,* 47 M.J 236, 243 (1997).

### DISCUSSION

In his letter to the Chief, Defense Appellate Division, dated 21 December 1998, the appellant unequivocally dismissed his appellate defense counsel when he proclaimed, "This leads me to the bottomline, you are FIRED! ! !" Because of the scope and content of this letter, the appellant effectively dismissed his fourth assigned appellate defense counsel and the supervisory chain in the Defense Appellate Division. Given the clear language of the appellant's dismissal letter, the motion by the Chief, Defense Appellate Division, to withdraw as counsel for the appellant was not only appropriate, it was required by AR 27–26, rule 1.16(a).

Likewise, the appellate record is uncontroverted that the appellant had previously and explicitly "fired" two of his previous three lead appellate defense counsel. As to the third lead appellate defense counsel, the appellant's own pleadings revealed his obvious dissatisfaction with counsel when he asked this court to prefer criminal charges against him, and when he asked the United States Court of Appeals for the Armed Forces to order the appointment of an Air Force lawyer as substitute counsel. We conclude, therefore, on the basis of the undisputed record, that the appellant explicitly or implicitly dismissed each Army appellate defense counsel who had been assigned to represent the appellant on appeal.

 Whether the appellant is entitled to another Article 70, UCMJ, counsel depends on whether he has made a showing that the dismissed appellate counsel were unsuitable or incompetent.[16] *See Bell,* 29 C.M.R. at 125. Absent that showing, the

---

16. Actually, we doubt that *Bell* requires us to decide whether appellant has made the requisite showing *as to all* of his dismissed counsel. Rather, the reasonableness of his decision to discharge the last counsel determines whether he is entitled to another Article 70, UCMJ, military lawyer. Nevertheless, the reasonableness or unreasonableness of the appellant's decisions to discharge his prior-assigned appellate defense counsel may demonstrate a pattern that is relevant in making our determination.

appellant's actions in dismissing counsel may be considered unreasonable, and an appellate court could conclude that he forfeited his right to Article 70, UCMJ, counsel. *See Bell,* 29 C.M.R. at 125. The burden is on the appellant to establish unsuitability or incompetency, just as the burden is on any appellant who attacks defense counsel for ineffective assistance of counsel. *Cf. Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *United States v. Moulton,* 47 M.J. 227 (1997); *United States v. Clemente,* 51 M.J. 547 (Army Ct.Crim.App.1999).

■ In conducting our analysis, we are mindful that our factfinding authority regarding post-trial collateral issues is constrained by Article 66(c), UCMJ. *See United States v. Ginn,* 47 M.J. 236 (1997). *Ginn* tells us that this court may not decide disputed questions of fact pertaining to post-trial claims of ineffective assistance of counsel on the basis of conflicting affidavits. It is unclear, however, whether this prevents us from deciding, without further factfinding as outlined in *Ginn,* whether the appellant in this case has "made a showing" of unsuitability or incompetency of appellate defense counsel based on factual averments, some disputed and some not, contained in the pleadings, motions, and a myriad of pro se documents.[17]

*Ginn* might be distinguished from this case, which involves assertions of ineffectiveness at the appellate level, because the *Ginn* principles specifically apply to post-trial attacks on counsel's performance at trial or during pretrial phases of representation. The difference between alleging ineffectiveness at the appellate level and the trial level, however, likely constitutes a distinction without meaning. Certainly the distinction does not undermine the rationale in *Ginn* that our factfinding authority is defined and constrained by Article 66(c), UCMJ. Regardless of whether the *Ginn* principles must be followed in resolving assertions of ineffectiveness of appellate defense counsel, we choose to apply *Ginn's* rationale and its six principles.[18]

■ Ever since the Chief, Defense Appellate Division, moved to withdraw as appellate counsel, we have sought to resolve the issue of appellate representation in accordance with the law and to preserve fully the appellant's rights. In this regard, we ordered that a conflict-free counsel be detailed to advise the appellant of his rights to appellate representation and the limits thereon. The conflict-free counsel was also required to respond on appellant's behalf to the Defense Appellate Division's motion to withdraw. The conflict-free counsel subsequently attested that she fully advised the appellant of his

17. The appellant professed in two pro se documents pertaining exclusively to his complaints about the Disciplinary Barracks that he made the statements "under penalty of perjury."

18. Under *Ginn,* the following six principles apply:

First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.

Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.

Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the

improbability of those facts, the Court may discount those factual assertions and decide the legal issue.

Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding. During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.

*Ginn,* 47 M.J. at 248.

rights to appellate representation, including the implications of proceeding pro se. She further informed the court that it was the appellant's position that he could not respond to the motion to withdraw until he had an opportunity to review the trial and appellate defense counsels' files.

After we ordered disclosure of both the trial and appellate defense counsel files, extensive litigation ensued over whether certain documents possessed by the Defense Appellate Division were releasable. The Defense Appellate Division argued that the documents were not part of the appellant's case file but were prepared in anticipation of assertions of ineffective assistance of counsel claims by the appellant. As indicated earlier, we ultimately ordered the Defense Appellate Division to release almost all documents to the appellant.

After the disputed documents were released to the appellant, he filed pro se documents asserting that the Disciplinary Barracks had seized his record of trial and other legal documents. The appellant then claimed, on this basis, that he could not respond to the Defense Appellate Division's motion to withdraw. In response, we expressed in an Order our expectation that the appellant should have reasonable access to his record of trial and legal papers; and, at the same time, we ordered the appellant to submit a detailed factual basis for his assertion of ineffective assistance of appellate counsel, if he still wished to make those allegations.

Through his conflict-free counsel, the appellant submitted a handwritten reply to our Order advancing three reasons he could not comply with our Order to detail the factual basis for his claim of ineffective assistance of counsel. Two of those reasons were new, but both were specious. The final reason was that the government had "confiscated all of [his] legal materials," as he had previously alleged. As previously mentioned, we ordered the Disciplinary Barracks to submit an affidavit regarding whether the appellant had been deprived access to the record of trial and other pertinent legal documents. In the same Order, we directed:

> That the appellant shall, within thirty (30) days of receipt of this order, submit specific allegations of professional deficiencies, if any, by each appellate defense counsel against whom he is alleging ineffective assistance of counsel. The appellant is directed to state the allegations based on his memory of what he believes his counsel did, or did not do, in his behalf which he believes to be ineffective. If the appellant believes that documents exist which support his position, but to which he no longer has access, he shall so state and identify the document(s). If the appellant believes that documents exist which would refresh his memory regarding the details of what he believes was ineffective assistance of counsel, he shall so state and identify the documents.

The appellant has not complied with the Order. Instead, he has sent five communications to the Clerk of Court, none of which explains why he believes his counsel were ineffective. In one communication he states, "I would respectfully abide by any instructions of the Court. However, I need representation; I do not know how to respond to the Court's order; I need help and I do not understand this."

We note that at about this same time, the conflict-free counsel informed the court that the appellant had "terminated"[19] her representation. Finally, as we mentioned earlier, the CJA, Disciplinary Barracks, submitted his affidavit in which he denied that appellant's legal material had been confiscated.

We conclude that the appellant has failed to make the *Bell* showing of unsuitability or incompetency on the part of the appellate defense counsel that he discharged. In reaching this conclusion, we have scrupulously avoided consideration of any facts in dispute between the appellant, appellate defense counsel, and the Disciplinary Barracks.[20]

---

19. The conflict-free counsel put quotation marks around the word, terminated, indicating to us that the word was probably the appellant's.

20. While factual disputes between the appellant and the Disciplinary Barracks have been raised by affidavit and statements under penalty of perjury, disputes between the appellant and appel-

Thus, we conclude that no further evidentiary hearing is required under the *Ginn* analysis.

A review of the voluminous submissions by the appellant reveals his extreme, and at times emotional, dissatisfaction with his appellate defense counsel. The basis for his dissatisfaction, however, is insufficiently clear and, therefore, inadequate to constitute a showing of unsuitability or incompetence. His submissions are vague, nonspecific, factually barren, and conclusion-oriented. He complains of missing exhibits, documents, and presumably other available evidence without giving any context. For example, assuming the evidence is missing and does exist, we cannot discern its impact, if any, on the findings. Further, assuming the evidence is missing, we do not know whether it was evidence admitted at trial, such that it should have been a part of the record of trial. If so, that raises an issue of the completeness of the record which we would sua sponte review under our Article 66, UCMJ, mandate.

Under *Ginn's* second principle, if an appellant does not set forth specific facts but instead submits speculative or conclusory observations, a claim of incompetency may be rejected without resort to an evidentiary hearing. We have attempted to ascertain from the appellant factually why he believes his counsel were deficient. Relying on multiple reasons why he cannot respond, however, the appellant has failed to answer this very simple question.

Instead of endeavoring to explain the basis of his dissatisfaction, the appellant has insisted on responding with pseudo-legalistic motions, declarations, letters, and miscellaneous filings. We have been forced to try to "read between the lines" to determine whether his complaints are reasonable.

One problem in making the unsuitability/incompetency determination is that we have not read the record of trial, as the issues were not joined until 5 May 2000, when the government filed its brief. Therefore, analyzing whether the appellant's coun-

sel should have asserted certain issues, as appellant claims, is impossible without knowing the context. This will be resolved once we conduct our review under Article 66, UCMJ. If we perceive any basis for the appellant's vague assertions of incompetency, we will review the issue ourselves and take whatever remedial action is necessary to vindicate the appellant's rights.

In the absence of the appellant's showing that his counsel were unsuitable or incompetent, and in consideration of appellant's failure to respond to our repeated Orders to detail why he believed they were incompetent, we conclude that the appellant has acted unreasonably in dismissing four successive appellate defense counsel. In accordance with *Bell*, we do not believe that appellant is *entitled* to substitute counsel under Article 70, UCMJ.

However, just as our superior court in *Bell* concluded on somewhat different facts, "in order to avoid the remote possibility [the appellant] might have been denied some right, we are going to afford him one last chance to have a military lawyer appointed by The Judge Advocate General of the Army." *Bell*, 29 C.M.R. at 124. We will order that a qualified counsel be provided to the appellant to advise and assist him in making his *Grostefon* submissions. We find it unnecessary and inappropriate that this new counsel start from square one. The court has before it thirteen assignments of error and a brief on behalf of the appellant. However, if the new counsel determines, in his or her professional opinion, that additional errors should be assigned, we will allow counsel to file supplemental assignments of error and a supplemental brief. The original pleadings, combined with any and all *Grostefon* matters the appellant wishes to present and supplemental issues, if any, that counsel determines should be filed, will fully vindicate the appellant's rights to a full and fair appellate review of his case.

Given this court's mandate under Article 66(c), UCMJ, to review the entire record and

late defense counsel have only been predicated upon pleadings, averments, and unsworn state-

ments.

approve only those findings of guilty we find correct in law and fact and believe *should* be affirmed, we shall ensure that this appellant receives his full measure of due process under the law. We will scrutinize this record for any hint of ineffective assistance of appellate defense counsel. Should we find any indication that appellant has been deprived of effective assistance of counsel, we will take appropriate remedial action to ensure the issue is fully considered and fairly resolved.

We hasten to add that if the appellant acts unreasonably to effect the dismissal of the newly assigned counsel, we will not hesitate to provide notice that his rights to military counsel under Article 70, UCMJ, have been finally forfeited in accordance with *Bell*.

In accordance with this opinion, NOW THEREFORE IT IS ORDERED:

That the appellant will be provided a qualified counsel, in accordance with Article 70, UCMJ, to assist him with *Grostefon* matters and to evaluate on the basis of counsel's professional judgment whether any supplemental assignments of error should be filed; [21]

That the newly assigned counsel shall have sixty (60) days from the date of assignment to assist the appellant to submit *Grostefon* matters and/or to submit supplemental assignments of error, if any; [22]

That Major Sheila E. McDonald, the conflict-free counsel, having been discharged by the appellant, is released from further representation of the appellant;

That Captain Scott A. de la Vega's motion to withdraw is GRANTED;

That Colonel Adele H. Odegard's motion to withdraw is GRANTED; [23] and

That the Defense Appellate Division's motion to withdraw as counsel for the appellant, only to the extent that it pertains to the appellate defense counsel of record, is GRANTED.

Senior Judge MERCK and Judge TRANT concur.

## APPENDIX

| Date | Occurrence |
| --- | --- |
| 25–Mar–96 | Article 39a, UCMJ, sessions and court-martial sessions. |
| 18–Apr–96 | |
| 29–30 Apr 96 | |
| 1–May–96 | |
| 14–Nov–96 | Action by convening authority. |
| 14–Mar–97 | Record of Trial (ROT) received by Clerk of Court. |
| 21–Mar–97 | Clerk ordered Referral and Designation of Counsel. |
| 31–Mar–97 | Clerk of Court referred to appellate defense counsel a pro se Petition for Extraordinary Relief, filed by appellant on 14 Mar 97, and addressed to the Court of Appeals for the Armed Forces. The Petition asks for New Trial/Sentence Rehearing. |
| 13–Mar–97 | Motion for extensions (3)—(5) granted. |
| 16–Sep–97 | |
| 12–Dec–97 | Motion for Leave to File Additional Matters pursuant to *Grostefon* granted. |
| 23–Dec–97 | Motion out of time for extension (6) granted. |
| 22–Jan–98 | Motion out of time for extension (7) filed by Chief, Defense Appellate Division (DAD), in which he advises court that appellant perceived conflict of interest with previously assigned counsel and requested new counsel. |
| 19–Feb–98 | Motion for extension (8), filed by new appellate counsel granted. |
| 23–Feb–98 | Writ filed pro se in which appellant asserted, inter alia, that his appellate defense counsel is unwilling to "represent justice for Appellant to obtain a full and fair Appellate Review of the prosecutor's use of known perjury." Denied writ on 2 Mar 98. |
| 13–Mar–98 | Appellant forwarded a pro se writ appeal of Army Court of Criminal Appeal's denial of appellant's Petition for Extraordinary Relief to the Court of Appeals for the Armed Forces. Requested assignment of Air Force counsel to represent him because Army "will only provide . . . another counsel that will be unwilling to zealously represent appellant." |
| 17–Mar–98 | Motion for extension (9) filed by third appellate counsel, who advised that appellant "requested replacement of yet another " appellate defense counsel. Chief, DAD, approved on condition that this is last. Motion granted. |

21. The court recognizes that, in order to avoid potential conflicts of interest, assignment of counsel may need to be made from outside the Defense Appellate Division.

22. Should the appellant or counsel need additional time to submit such matters, they may request an extension based on good cause shown.

23. The court specifically declines to rule on the motion to sever because that issue is beyond the purview of the court.

| | |
|---|---|
| 2–Apr–98 | The United States Court of Appeals for the Armed Forces denied appellant's petition without prejudice to his right to assert the matter raised in the petition during the course of normal appellate review. |
| 8–Apr–98 | Appellant filed pro se letter dated 7 Apr 98: "This court is not to accept any filings on my behalf by any assigned appellate defense counsel without my expressed consent by means of original signature. Henceforth, from this date." |
| 13–Apr–98 | Appellant filed pro se letter: "I hereby rescind my letter to this court dated 7 April 1998." |
| 20–Apr–98 | Motion for extension (10) granted. |
| 19–May–98 | Motion for extension (11)—in which appellate defense counsel advised that a brief will be completed by the due date, 23 May 98, but appellant requested to see draft "before submitting his matters"—granted |
| 12–Jun–98 | Pro se Writ of Prohibition filed in which appellant requested, inter alia, that Court prefer charges against MAJ Nepper, CPT Barrett, and CPT Gifford (Appellate Defense Counsel) for noncompliance with procedural rules (Article 98), false official statements (Article 107), and conduct unbecoming an officer (Article 133). Writ denied 19 Jun 98. |
| 17–Jun–98 | Motion for extension (12) granted—brief completed, but "appellant, in a pro se writ to the court has raised issues which bring into question the [appellate defense counsel's] representation of the appellant." |
| 17–Jul–98 | Motion for extension (13) granted based on same reason—("Issue still has not been resolved.") Signed by Chief, DAD. |
| 19–Aug–98 | Motion for extension (14) granted based on same reason—("Issue still has not been resolved.") Signed by Chief, DAD. |
| 18–Sep–98 | Motion for extension (15) granted. Chief, DAD, cited as reason for extension that he had agreed to provide another (fourth) appellate defense counsel, who needs time to review the case. |
| 5–Oct–98 | Brief on Behalf of Appellant filed by fourth assigned appellate defense counsel, along with Chief and Deputy Chief, appellate defense counsel, on the brief. Alleged thirteen assignments of error, with Appendix containing eleven allegations of error summarized by counsel and submitted pursuant to *Grostefon* and twelve additional, handwritten, allegations submitted personally by the appellant. |
| 7–Oct–98 | Motion for Extension to File Supplemental Assignments of Error and Additional *Grostefon*. Appellate defense counsel stated that if missing videotape is found, appellate defense counsel will need time to review and file additional pleadings. Appellant requested he be allowed to file additional *Grostefon* after he has opportunity to thoroughly review brief on behalf of appellant. Granted |
| 3–Dec–98 | Motion to Withdraw *Grostefon* Submissions granted. |
| 7–Dec–98 | Motion for Extension to File *Grostefon* Matters—granted as final extension. |
| 21–Dec–98 | Letter from appellant to COL Phelps, Subject: Written Notification of Non–Compliance Pursuant to Binding Case Law and Extreme Conflict of Interest |

| | |
|---|---|
| | with Assigned Counsel. Copy faxed to TJAG and Chief Judge (Appendix H, Brief in Support of Motion to Withdraw). The appellant attacks Chief, DAD, the fourth appellate defense counsel assigned to represent the appellant, and the Clerk of Court. Asserting that his counsel have been incompetent and unwilling to pursue certain issues, the appellant concludes that there exists an "extreme conflict of interest" between his counsels and himself which "leads [him] to the bottomline, You are FIRED!!!" |
| 30–Dec–98 | Chief, Defense Appellate Division, filed Ex parte Motion for Defense Appellate Division to Withdraw as Counsel for Appellant. Also filed a motion to allow appellant 30 days to respond to ex parte motion. Brief in support of ex parte motion filed. |
| 13–Jan–99 | Appellant filed motion for extension of time to respond to Ex Parte Motion for Defense Appellate Division to Withdraw as Counsel for Appellant. |
| 14–Jan–99 | Motion to reclassify Ex Parte Motion as Standard Motion for Defense Appellate Division to Withdraw as Counsel for Appellant. |
| 22–Jan–99 | Army Court of Criminal Appeals Ordered:<br>(1) That a conflict-free counsel be appointed to advise the appellant on the pending motions and options regarding representation;<br>(2) That the conflict-free counsel advise appellant of his rights to appellate representation;<br>(3) That conflict-free counsel shall respond to pending motions. |
| 11–Feb–99 | Granted Defense Appellate's Motion to File Appellant's Reply (pro se) to Ex Parte Motion for Appellate Defense Division to Withdraw as Counsel for Appellant. This pro se document argues that appellant is overwhelmed and requests Court to appoint conflict-free counsel for representation. |
| 18–Feb–99 | Chief, Defense Appellate Division, filed motion to request specific guidance regarding the defense appellate division's interaction with appellant's conflict-free counsel. |
| 16–Apr–99 | Motion pursuant to *United States v. Grostefon*, filed by conflict-free counsel, requesting the court to grant appellant's pro se "Motion for Major Sheila E. McDonald to file a written response reflecting her position and the behind closed door in chambers meeting(s) with Senior Appellate Judge Cairns regarding appellate defense division's ex parte motion to withdraw as appellant's counsel," contained in an Appendix. |
| 19–Apr–99 | Conflict–free counsel filed Motion to Withdraw Grostefon Submission (filed 16 Apr 99). |
| 19–Apr–99 | Pro Se Motion for Major Sheila E. McDonald to file a Written Response Reflecting her Position and the Behind Closed Door in Chambers Meeting(s) with Senior Appellate Judge Cairns Regarding Appellate Defense Division's Ex Parte Motion to Withdraw as Appellant's Counsel. This is the same motion as was submitted by MAJ McDonald on 16 April 99 and subsequently motioned for with- |

drawal on 19 Apr 99. Appellant asserts that MAJ McDonald "concurs with the adverse party" and that MAJ McDonald has advised him that no record will be made of in-chambers. Appellant moves for appointment of conflict-free counsel for representation.

26–Apr–99 Motion for extension for conflict-free counsel to respond to motion to withdraw the defense appellate division until 23 May 99. Granted.

27–Apr–99 Pro Se Motion for Order to Produce Appellant's Trial Defense Counsels and All Appellate Attorney of Record Case File (Sic). Appellant asks for case files from trial and appellant defense counsel. Appellant makes vague assertion that somebody (perhaps appellate counsel) has made misrepresentations amounting to fraud on the court. "Appellant now questions whether the entire military appellate process is ineffective," pointing out that two years have elapsed since the appeal began, "thereby infringing upon Appellant's Fifth, Sixth, and Fourteenth Amendment rights." Moves for order directing production of all case files.

4–May–99 Army Court of Criminal Appeals Ordered:
(1) Appellant's 19 Apr 99 pro se motion styled, "Motion for Major McDonald to file a written response reflecting her position [etc]" denied;
(2) Appellant's pro se motion to order conflict-free for representation denied;
(3) That Major McDonald file by 23 May 99 her response to the defense appellate division's motion to withdraw;
(4) That appellant state by 23 May 99, either personally under *Grostefon*, or through counsel, whether he is asserting ineffective assistance of counsel against trial and appellate defense counsel.

20–May–99 Appellant filed pro se motion for discovery and inspection of appellate and trial records: Appellant "requests the right to examine, inspect, and copy all trial notes, records, files, and work product... related to appellant's case... to wit: all trial records and appellate records prepared by CPT Wee, MAJ Taylor [trial defense counsels], COL Phelps, LTC Walters, LTC Odegard, MAJ Coffey, MAJ Nepper, CPT Barrett, CPT Gifford, and CPT De la Vega [appellate defense counsels]. These records are needed to assure that the appellant is able to properly raise the issues of ineffective assistance of counsel on appeal and at trial...."

20–May–99 MAJ McDonald filed appellant's response to Motion to Withdraw the Defense Appellate Division as Counsel for Appellant: Conflict-free counsel attested that she advised appellant of the "substance and effect of the motion to withdraw, all of his options regarding appellate representation, to include the implications of proceeding pro se...."
(1) "[I]n light of the appellant's recent allegations of ineffective assistance of counsel at both the appellate and trial level, the appellant states that he cannot at this time provide the court with a response [to] the motion to withdraw.

The appellant states that until he has had an opportunity to examine counsel's files he is unable to provide the court a more direct response to the motion to withdraw."
(2) Appellant asserts, because he has alleged that all his trial and appellate defense counsel were ineffective (in his pro se filing of 20 May 99), he is entitled to an appointed substitute counsel for representation.

9–Jun–99 Army Court of Criminal Appeals Ordered:
(1) That TDC's and ADC's of record send copies of their case files to appellant;
(2) That appellant shall submit specific allegations of professional deficiencies by each appellate defense counsel against whom he is alleging ineffective assistance of counsel.

21–Jun–99 Chief, Defense Appellate Division, filed acknowledgement of compliance with 9 June 1999 order of the Army Court of Criminal Appeals (Appendix listing of 51 documents previously forwarded to conflict-free counsel).

21–Jun–99 Chief, Defense Appellate Division, filed Ex Parte Supplemental response to the 9 June 1999 Order of the Army Court of Criminal Appeals.
Advised court that "documents exist which defense appellate division attorneys have prepared in anticipation of potential litigation or [sic] ineffective assistance of counsel claims initiated by Sergeant Parker. These are maintained separate and apart from any and all files relating to Sergeant Parker's substantive appeal. These documents have not been provided to Sergeant Parker."
Requested that "if court deems it necessary to examine said documents to determine whether they should be released to Sergeant Parker, the defense appellate division requests such examination be conducted ex parte and in camera."

24–Jun–99 MAJ Taylor acknowledged compliance with court's 9 June 1999 order.

6–Jul–99 Thomas C. Wee (formerly CPT Wee) acknowledges compliance with court's 9 June 1999 order.

9–Jul–99 Conflict–free counsel filed motion for extension, in which she stated appellant requested extension of time to comply with the 9 June 99 order so he could "assess the information he has obtained as a result of the court's 9 June 1999 order." Further, she certified that she had complied with the orders of the court regarding representation of the appellant and "requests that the court look directly to the appellant for a response to the 9 June 1999 order of this court." Granted the motion on 12 Jul 99.

11–Aug–99 CPT De la Vega filed motion for his withdrawal as appellate defense counsel based on his impending separation from the Army.

12–Aug–99 Army Court of Criminal Appeals Ordered:
(1) That defense appellate counsel show cause why the court should not order disclosure of documents, examined in camera and contained in document binder with twenty tabs, which were not released

to the appellant pursuant to Army Court of Criminal Appeals' 9 Jun 99 order;

(2) That the original documents reviewed in camera shall be sealed and attached to record as an appellate exhibit for further appellate review of court's order. Documents are not before the court on issue of ineffective assistance of appellate defense counsel;

(3) That our previous order requiring appellant to submit specific allegations regarding ineffective assistance of appellate defense counsel, if any, shall be held in abeyance pending resolution of the disclosure of these documents.

13–Aug–99 Chief, Defense Appellate Division, filed Ex Parte Notice of Intent to File Request for Reconsideration With Suggestion for Reconsideration En Banc; and Motion to Stay Publication of Order; and Motion to Expedite Consideration of Motion to Stay Publication of Order; and Motion to Request Seal. Court granted motion for expedited consideration and to seal, but neither granted nor denied motion to stay publication of the order because the order had already been published.

27–Aug–99 Chief, Defense Appellate Division, filed Request for Reconsideration (of order to show cause); Motion to Expedite Request for Reconsideration; and Motion to Seal Request for Reconsideration. Court granted motion to expedite consideration, but denied motion to seal filing and motion to permit response to be submitted ex parte.

10–Sep–99 Chief, Defense Appellate, filed response to order to show cause:
(1) Presents chronology of case;
(2) Does not concede that the documents constitute "files" as contemplated in *United States v. Dupas*, 14 M.J. 78 (C.M.A. 1982); however, in interests of resolving the issue, appellate defense counsel will not object to release of Tabs 1–8, 10–13, 16, 18 & 19, providing court concludes their release is critical in resolving the issue;
(3) Appellate defense counsel objects to release of Tabs 9, 17, and 20, as explained in Ex Parte Appendix A, and Tabs 14 & 15, as explained in Ex Parte Appendix B.

17–Sep–99 Pro se documents filed, entitled: Request for Determination of Counsel and Notice to the Court as to Delay in Appellant's Response. The appellant alleges that the Commandant of the Disciplinary Barracks, his Command Judge Advocate, members of Government Appellate Division, and "possibly the Defense Appellate Division," conspired to deny appellant access to the Court by seizing his record of trial, law books, pleadings, and other legal materials and by placing the appellant in solitary confinement, all in an effort to prevent appellant from filing legal actions on his behalf and on behalf of other inmates. The appellant specifically requested that the Court consider his pleading as a Writ of Mandamus, asking the Court to order the return of appellant's legal materials. He further asked for injunctive relief in the nature of an order: (a) "directing the government ... to im-

mediately stop scheduling law library time and outdoor recreation/weight room call at the same time"; (b) "appointing conflict-free counsel to act in appellant's behalf ... to assure the appellant equal protection under the law"; and (c) "directing the government ... not to confiscate, delay, or interfere with any legal correspondence of appellant and direct that all legal correspondence be opened in his presence." On 27 October 1999, the Court denied the appellant's petition for a writ of mandamus and injunctive relief.

17–Sep–99 Appellant submitted another pro se document entitled Objection to Government/Defense Appellants [sic] Division Motion for Reconsideration to Seal Records. This motion was moot because the Army Court of Criminal Appeals denied appellate division's motion to seal.

13–Oct–99 Appellant submitted pro se documents entitled Declaration in Support of Confinement Facility's Inadequate Law Library and Unconstitutional Institutional Regulations. The appellant asserts that, as a result of inadequate law library facilities at the Disciplinary Barracks and the rules relating to inmate access to the library, he has been denied access to the Court. The appellant also attacks as unconstitutional the Disciplinary and Administrative Board procedures under which he apparently was punished for "conferring with other inmates with legal problems ... and trafficking in legal documents."

26–Oct–99 Appellant submitted pro se document entitled, Declaration in Further Support of Appellant Being Denied Access to the Courts. Appellant reasserts his allegations of conspiracy to deny him access to the Court by seizure of his legal papers, and he details how the command judge advocate allegedly designed the scheme to deny him access and influenced the outcome of a Disciplinary and Administrative Board. The appellant concludes that the Defense Appellate Division "has withdrawn," the Disciplinary Barracks law library is inadequate, and the government representatives "are precluding [his] access to the courts—an insurmountable and irreparable prejudice." Finally, he states that Major Sheila E. McDonald, appellant's conflict-free counsel appointed in response to our order of 22 January 1999, has refused to return his telephone calls, "wherefore, appellant prays that this Honorable Court shall take seriously the many claims against government representatives and Major McDonald, taking into consideration the facts presented here, which has and continues to deny appellant access to the courts and 'full and fair' consideration during the course of direct appeals."

10–Nov–99 Army Court of Criminal Appeals Ordered:
(1) The appellate defense counsel shall provide appellant copies of all documents in document binder except those found at Tabs 14 and 15;
(2) The appellant shall have thirty (30) days from receipt of the released documents to submit to the court specific allegations of professional deficiencies, if any, by each appellate defense counsel against

whom he is alleging ineffective assistance of counsel;

(3) Substantive appeal no longer in abeyance. The government shall prepare its response to the appellant's assignments of error.

1–Dec–99 Chief, Defense Appellate Division, filed response to order, advising the court that she had complied with the 10 November 1999 order, as evidenced by return receipt signed by appellant.

13–Dec–99 Government appellate counsel files, out of time, motion for second extension of time to file response brief.

16–Dec–99 Appellant files motion in response to court order in which he listed three reasons he could not comply with the court's order of 10 Nov 99.

17–Dec–99 Government filed motion for extension of time (3).

6–Jan–00 Army Court of Criminal Appeals Ordered:

(1) The Commandant, Disciplinary Barracks, or his designee, submit an affidavit regarding appellant's allegations that his record of trial and other legal documents have been confiscated, thus preventing appellant from complying with court's order to detail deficiencies by appellate defense counsel.

(2) That within thirty (30) days, appellant submit from memory specific allegations of professional deficiencies, if any, by each appellate defense counsel against whom he is alleging ineffective assistance of counsel.

27–Jan–00 Government filed motion for extension of time (4) to respond to appellant's assignment of errors.

14–Feb–00 Major McDonald filed motion for further guidance, in which she sought guidance from the court on how to proceed in view of the fact that appellant had informed her that their attorney-client relationship was terminated.

16–Feb–00 Clerk of Court received affidavit by Lieutenant Colonel Alan L. Dunavan, who responded on behalf of the Commandant, Disciplinary Barracks, to court's 6 Jan 00 order.

2–Mar–00 Clerk of Court submitted memorandum forwarding documents received by the Office of the Clerk of Court from Appellant:

(1) Letter, dated 20 Jan 00, requesting copy of Court's rules.

(2) Letter, dated 1 Feb 00, stating, "I need representation; I do not know how to respond to the Court's order; I need help and I do not understand this."

(3) Letter, dated 15 Feb 00, asserting, "On 13 February 2000, MSG Hudson (Guard Commander) confiscated *all* of my legal books and other materials. Despite my requests, the aforementioned has not been returned."

(4) Letter, dated 18 Feb 00, responding to MAJ McDonald's Motion for Further Guidance. Appellant asserts that MAJ McDonald has advised him that she is not his attorney; that, consequently, they had no attorney-client relationship; that she has not assisted appellant in filing pleadings or motions; and that "in fact, her conduct has impeded me . . . ."

(5) FAX coversheet, dated 28 Feb 00, in which the appellalnt states: "This fax serves as a notice that as of this this (sic) date, my legal materials confiscated on 13 February 2000, has (sic) not been returned, despite my numerous verbal and written requests. These materials are currently in the possession of LTC Alan Dunavan, the same individual who recently submitted an affidavit to the Court stating that I have not been denied access to the courts. Moreover, I have been informed that LTC Dunavan is inventory (sic) my personal property for reasons not disclosed to myself.

7–Mar–00 Government filed motion for extension of time (5).

5–Apr–00 Army Court of Criminal Appeals ordered Clerk of Court's memorandum, dated 2 March 2000, Subject: Correspondence from Wayne M. Parker, with five enclosures, attached to the record of trial as an Appellate Exhibit.

6–Apr–00 Government filed motion for extension of time (6). Granted as the final extension.

18–Apr–00 Chief, Defense Appellate Division, moved to withdraw and sever the attorney-client relationship, asserting that appellant had filed a civil suit naming, inter alia, current and former Chiefs, Defense Appellate Division, and three of the four assigned lead defense appellate counsel individually.

3–May–00 Granted motion by Chief, Defense Appellate Division for expedited ruling on motions to withdraw.

5–May–00 Brief on Behalf of Appellee filed.